**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MONICA O'DONNELL,** | : | |
| | : | **Civil No. 3:09-CV-1173** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

Now pending before the Court is Plaintiff Monica O'Donnell's first motion for

sanctions against Defendants and their counsel.[1]  (Doc. 33.)  As grounds for the

motion, O'Donnell argues that Defendants failed to participate in good faith in court-

ordered mediation and settlement proceedings in May and September 2010, thereby

causing Plaintiff and her counsel to incur needless costs and expenses that could have

been avoided had Defendants produced a principal with settlement authority at either

settlement conference.  Because Defendants failed to do this, Plaintiff argues that

---

[1] O'Donnell has more recently filed a second motion for sanctions on the
asserted basis that Defendants have failed to respond to discovery requests in this
case.  (Doc. 39.)  This motion is not yet fully briefed by the parties, and will not be
addressed in this order.

time spent preparing for two separate settlement conferences, and participating in one, was wasted unnecessarily. As a remedy, Plaintiff asks that the Court require Defendants to pay a sanction of $3,775.00, or that amount of attorney's fees and costs that were incurred in connection with the two unsuccessful settlement conferences.

Upon consideration, although we agree with Plaintiff that Defendants' communication in connection with the prior settlement conferences has fallen short of what the Court expects of parties and counsel, we do not find that the full sanctions sought by the Plaintiff are warranted at this time.[2] Instead, in the exercise of our discretion, we will impose a nominal sanction at this time, without prejudice to the Plaintiff seeking full reimbursement of these costs and fees at the close of these proceedings, if any award of such fees is appropriate at that time.

While we only impose a nominal sanction at this time, we deem it appropriate to make clear in this order our finding that Defendants, on multiple occasions over an extended period of time, failed to abide by this Court's orders, and exhibited a troubling and persistent failure to communicate with clarity and candor with opposing counsel and the Court regarding multiple mediation proceedings that have been scheduled. As a result of these failings, Defendants have caused unnecessary delays

---

[2] However, we note that in the event Plaintiff is the prevailing party in this lawsuit, her counsel may seek to recover the fees and costs incurred in connection with both settlement conferences.

in the orderly progress of this action, and have caused Plaintiff to incur needless expenses in preparing for mediation proceedings that now appear to have been entirely avoidable. We also find, contrary to Defendants' position, that this Court has the discretion to award sanctions based upon our findings regarding Defendants' conduct. Finally, in order to avoid any further confusion we write to make clear our expectation that Defendants' communicate with greater clarity and candor with both opposing counsel and with this Court to ensure that this action can proceed to resolution without any further undue delay.

## II.    Statement of Facts and of the Case

This is an action brought by Monica O'Donnell, an employee of the State Department of Corrections, against her employer. (Doc. 9.) In her complaint, O'Donnell recites that she was a diabetic employee of the state prison system who worked at the State Correctional Institution, Frackville. (Id.) According to O'Donnell, as an insulin dependent diabetic, she required reasonable accommodation from her employer in the form of various medical supplies which would allow her to monitor her blood sugar, and receive insulin injections as required. (Id.) O'Donnell alleges that prison officials denied her these reasonable accommodation, and then retaliated against her for seeking to invoke her civil rights. (Id.) On the basis of these assertions, O'Donnell brings claims against the state Department of Corrections under the

Americans with Disabilities Act, the Rehabilitation of Act 1973, the Family Medical Leave Act, and the Pennsylvania Human Relations Act, seeking equitable, injunctive and declaratory relief, along with compensatory and punitive damages. (Id.)

On March 12, 2010, this case was assigned to this Court. (Doc. 17.) Upon receiving this case, we scheduled a telephonic case management conference with the parties for March 29, 2010. (Doc. 18.) At this March 29, 2010, the Court noted that this case had been selected for mandatory mediation under the Court's mandatory mediation program. (Docs.19 and 20.) Accordingly, on April 1, 2010, the Court referred this matter to mediation. (Doc. 20.) At no time during this referral process did the Commonwealth place the Court on notice that mediation would be fruitless because the state was categorically refusing to consider any financial compensation for the Plaintiff. Thus, the Court, the mediator, and the Plaintiff undertook this process with the expectation that mediation could be meaningful in this case.

On May 12, 2010, six weeks after this April 1, order was entered directing the parties to engage in mediation efforts, a mediation session was scheduled. The Commonwealth now concedes in its pleadings that this six week delay was the fault of the Defendants, who failed to respond to "repeated attempts" by the mediator to set an earlier date for this mediation. (Doc. 36-1, letter from mediator to counsel.) Despite this delay, virtually all participants to the mediation initially believed that this

effort successfully mediated and resolved their dispute. Thus, on May 17, 2010, the court-appointed mediator "certif[ied] that the parties met in mediation which was successful in reaching a settlement of all matters in the case." (Doc. 21.) The Plaintiff also clearly believed that this mediation had resulted in a settlement of this case, a view which O'Donnell expressed to the Court. (Doc. 23.)

In fact, although the mediator and the Plaintiff both plainly understood that the Commonwealth had agreed to settle this case, the Commonwealth apparently was renouncing the terms of the settlement that all of the other participants in this mediation believed had been reached. Simply put, the contrasting views of the participants as to what transpired at this mediation are, and remain, inexplicable. What then transpired, however, went beyond the inexplicable and moved into the realm of the inexcusable.

Although the Commonwealth apparently concluded at some time that it would not settle this case on the terms discussed at the mediation, it failed to effectively communicate that fact to the mediator, or the Court for six weeks. Thus, when the mediator filed his report announcing a settlement on May 17, 2010, (Doc. 17) the Commonwealth took absolutely no steps to clarify this erroneous report. Similarly, when the Court acted upon this erroneous information on May 18, 2010, and entered an order dismissing the case, (Doc. 18) the Commonwealth never took any steps to

correct this fundamental misunderstanding and prevent the dismissal of this case which it knew had not been settled. Indeed, the first notice that the Court received regarding the fact that the Commonwealth may not have settled this case which the mediator had reported resolved came on July 1, 2010, and was reported to the Court, not by the Commonwealth, but by the Plaintiff, who advised the Court that the "Defendant now disputes the settlement." (Doc. 23.)

Having received word of this apparent shift in the Commonwealth's position in this elliptical fashion, we scheduled a conference of counsel on July 12, 2010. (Doc. 24.) This conference was scheduled, in part, to allow the Commonwealth to clarify its position on the issue of mediation and settlement. Regrettably, however, the Commonwealth's actions at the conference only further compounded the confusion on this issue. At this conference, the Commonwealth explained that it had not reached an agreement on the terms of a financial settlement during the mediation session, but the Commonwealth's counsel represented to the Court that she had given her "enthusiastic recommendation" that the Commonwealth accept the terms of the financial settlement discussed at the mediation. Informed by the Commonwealth that its own counsel enthusiastically recommended settlement of this case on the terms discussed at the May, 2010 mediation, the Court was led to believe that further mediation efforts could prove fruitful. Accordingly, on July 12, 2010 we entered an

order which reflected the representations made by the Commonwealth and stated, in part, as follows:

> AND NOW, this 12th day of July, 2010, the above-captioned matter having come before the Court on a telephone conference to discuss the status of the parties' earlier settlement efforts, and a misunderstanding that had arisen between Plaintiff and Defendants about the result of these prior settlement discussions; and the Court having determined that the parties are likely to benefit from engaging in further settlement negotiations in an effort to reach a mutually agreeable resolution of the claims in this action; and the parties having confirmed that additional settlement negotiations are likely to be helpful; IT IS HEREBY ORDERED THAT the parties shall continue to engage in settlement negotiations for a period of up to 30 days from the date of this order in an effort to resolve Plaintiff's claims. IT IS FURTHER ORDERED that the parties shall report back to the Court in writing not later than Wednesday, August 11, 2010 [concerning the status off these settlement discussions.]

(Doc. 25.)

At no time during these July, 2010, discussions did the Commonwealth report to the Court that these efforts would be fruitless because the Defendants were categorically opposed to any financial settlement of O'Donnell's claims. Quite the contrary, it was represented that the Commonwealth's counsel would enthusiastically recommend settlement of these financial claims.

Despite the Court's instruction that "that the parties shall report back to the Court in writing not later than Wednesday, August 11, 2010 [concerning the status off these settlement discussions,]" (Doc. 25), the Commonwealth never filed any

status report in August describing its views regarding the prospects of settlement in this case. Instead, the sole status report submitted in this matter was tendered by the Plaintiff on August 6, 2010. (Doc. 26.)

That status report indicated that a settlement had not been reached, but recommended that further settlement discussion be scheduled. According to the Plaintiff's status report, the impediment to settlement was the absence of proper agency officials with settlement authority at prior conferences. Accordingly, the Plaintiff's status report made the following recommendation:

> The plaintiff believes that the assistance of the assigned Magistrate Judge in one final settlement conference would be beneficial to our settlement efforts. However, plaintiff requests that the principal for Defendant DOC with ultimate settlement authority be ordered to attend in person. Plaintiff also requests that Defendants confirm the authority of the DOC designee as the official who in fact does possess final, binding settlement authority. *Defendant concurs*.

(Doc. 26.)(emphasis added).

These August submissions ordered by the Court provided the Commonwealth with yet another opportunity to provide clarity concerning its settlement posture in this matter. Yet, the Commonwealth forfeited this opportunity by failing to file the status report called for by the Court, and by taking no steps to clarify its position regarding the Plaintiff's status report, which recommended further settlement

discussions, with agency principals present, and flatly stated that the Defendants concurred.

Having been informed that the Plaintiff was requesting further mediation with agency principals present, and that the Defendants concurred, on August 18, 2010, we entered an order scheduling such mediation efforts for September 9, 2010. (Doc. 27.) That order, in part, instructed the parties to submit confidential settlement memoranda by September 6, 2010. (Doc. 27.) At no time during these August, 2010, discussions did the Commonwealth report to the Court that these efforts would be fruitless because the Defendants were categorically opposed to any financial settlement of O'Donnell's claims.[3]

---

[3]We note that the Commonwealth's brief in opposition to this motion for sanctions contains a factual error regarding the chronology of events in August 2010, stating; " Before the [August 11, 2010] deadline for getting back to the Court had expired, . . . the Court scheduled a conference scheduled [sic] for September 9, 2010."(Doc. 36, p.3.) This assertion is not correct, and is, in fact, refuted by the docket in this case. That docket shows that on July 12, 2010, the court instructed the parties to file status reports concerning settlement by August 11, 2010. (Doc. 25.) The Conmmonwealth never complied with this order. However, the court did *not* schedule the September 9, 2010 settlement conference prior to the expiration of this August 11, 2010 deadline, as the Commonwealth states in its brief. Quite the contrary, the Court entered its scheduling order setting this September 9, 2010 conference on August 18, 2010, one week *after* the Commonwealth permitted this deadline to lapse without filing the status report called for by the court. Thus, the Commonwealth's suggestion that it was denied the opportunity to file a timely status report by some hasty action on the part of the court is simply incorrect.

This Court's August 18, 2010 order instructed the Commonwealth to file a confidential settlement memorandum by September 6, 2010.(Doc. 27.) The Commonwealth did not comply with this court-ordered deadline. Instead, the Commonwealth submitted its confidential memorandum to the Court at 4:21 p.m. on September 7, 2010, one day after the deadline set by the Court.

This tardy confidential memorandum reported for the first time that the state Department of Corrections advised the Court that it was categorically refusing to consider any financial settlement of this case, a position which the Commonwealth reported had been reached sometime after the previously scheduled mediation in May, but had never previously been communicated to the Court. Alerted to the Commonwealth's position in this belated submission, the Court confirmed on the morning of September 9, 2010–the date set for the settlement conference–that the Commonwealth was categorically refusing to consider any financial settlement of this matter. The Court then cancelled this conference. (Docs. 28 and 29.)[4]

---

[4]While it is undisputed that this belated notice from the Commonwealth was the first notice provided to the court that mediation might be futile in this case, the defendants insist that at some, unidentified time before the September 9 conference, DOC informed counsel that it would not offer a financial settlement to the plaintiff. Commonwealth counsel indicated that she communicated that position at some time to the plaintiff's counsel, (Doc. 36, p.4) but none of the parties provide a date or time for this alleged communication. Because we are resolving this motion through the imposition of only nominal sanctions, we do not find this dispute to be material to our decision.

This sanctions motion followed. (Doc.33.) The parties have now fully briefed their respective positions on the Plaintiff's request for a sanction of $3,775.00, or that amount of attorney's fees and costs that were incurred in connection with the two unsuccessful settlement conferences. (Docs. 34 and 36.) Accordingly this matter is now ripe for resolution.

For the reasons set forth below, the motion will be granted, in part, in that a nominal sanction of $300 will be imposed at this time. The remaining requests for sanctions will be denied without prejudice to the Plaintiff renewing this request for additional attorney fees at some future time, if she prevails in this action.

## III.   Discussion

It is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it.[5] See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d

---

[5] We agree with Defendants that Plaintiff's reliance upon Rules 11, 26, or 37 of the Federal Rules of Civil Procedure as independent bases for sanctions in this matter is misplaced. Rule 11(c) authorizes a district court to impose sanctions upon a lawyer or pro se litigant who violates the requirements governing pleadings and other submissions set forth in Rule 11(b). Rules 26 and 37 are discovery-related rules, and contain provisions authorizing district courts to impose sanctions against parties or lawyers found in violation of these discovery rules. None of these rules has application to the motion before the Court, which relates only to Defendant's conduct with respect to two separate court-ordered mediation proceedings.

Cir. 2007). Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson ). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43 (1991).

If a district court awards sanctions pursuant to its inherent authority, the Third Circuit will review such an award for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)).

In addition to the court's inherent authority, Rule 16(f) of the Federal Rules of Civil Procedure also provides that upon a motion, or on its own, a court may issue sanctions if a party or its attorney:

> (A)  fails to appear at a scheduling or other pretrial conference;
>
> (B)  is substantially unprepared to participate – or does not participate in good faith – in the conference; or
>
> (C)  fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f); <u>see also</u> <u>Tracinda Corp.</u>, 502 F.3d at 242 (observing that whereas sanctions imposed pursuant to court's inherent authority generally require finding of bad faith, Rule 16(f) contains no such requirement).While the Defendants have suggested that, as a matter of law, the Court is powerless to sanction parties for actions relating to settlement and mediation conferences, plainly under Rule 16 this is not correct. Quite the contrary, it is well-settled that Rule 16 "is the *usual vehicle* for imposing coercive or punitive sanctions in these circumstances." <u>Taberer v. Armstrrong World Indus., Inc</u>., 954 F.2d 888, 892, n.3 (3d Cir. 1992)(emphasis added). Indeed,

> Relying on this Rule, [courts] have imposed sanctions based upon an attorney's failure to attend a settlement conference or abide by the order scheduling the conference. <u>See Univ. of Pittsburgh v. Varian Med. Sys., Inc</u>., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008) (Schwab, J.) (denying motion for reconsideration of sanctions imposed for failure to participate in settlement conference in good faith); <u>Karhuta v.</u>

Boardwalk Regency Corp., 06-4902, 2007 WL 2825722, at *3 (E.D.Pa. Sept.27, 2007) (Perkin, M.J.) (sanctions imposed for failing to participate in settlement conference in good faith); Miller v. Unum Life Ins. Co. of America, 05-177, 2006 WL 30000962, at *1 (E.D.Pa. Oct. 19, 2006) (Hart, M.J.) (sanctions imposed for failure to attend court ordered settlement conference).

Stewart v. Moll, No. 07-1085, 2008 WL 2954737, 3 (E.D.Pa. July 31, 2008). Thus, Rule 16 expressly authorizes imposition of sanctions where parties fail to comply with scheduling orders setting settlement conferences by failing to timely and properly file settlement memoranda, Grant v. Omni Health Care Systems of NJ, Inc., No. 08-306, 2009 WL 3151322 (D.N.J. Sept. 24, 2009), or by failing to adequately prepare for such conferences. Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008).

Furthermore, Rule 16 also permits the imposition of sanctions where a party's failure to disclose its true settlement posture to the court in a timely fashion leads to the unnecessary scheduling of settlement conferences and proceedings. Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722 (E.D.Pa. Sept.27, 2007). In such instances courts have sanctioned and condemned defendants when the "Defendant did not notify the Court beforehand that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and energies of the Court and Plaintiff [at the settlement conference], " Karahuta v.

14

Boardwalk Regency Corp. 2007 WL 2825722 at *4(citations omitted). Thus, if a party has engaged in initial settlement efforts, and those efforts have failed, a duty of candor is owed to the court and opposing counsel when additional settlement proposals are discussed. In this setting, it is clear, and courts have held that "Defendants, knowing that they did not possess any additional authority following the initial conference, should have notified the Court before the second conference of their position." Id. at *6.

Yet while Rule 16 gives the court the discretion to sanction failures by defendants to comply with settlement conference orders, and other conduct in the course of settlement conferences which wastes the limited time, financial resources and energies of the court and plaintiff, this discretion is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See, Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d Cir. 1999).This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways. Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct

which abuses the judicial process." <u>Chambers v. NASCO, Inc</u>. 501 U.S. at 44-45

(citation omitted). Therefore, in exercising this authority we are cautioned that:

> [A] district court must ensure that there is an adequate factual predicate
> for flexing its substantial muscle under its inherent powers, and must
> also ensure that the sanction is tailored to address the harm identified.
> In exercising its discretion under its inherent powers, the court should
> be guided by the same considerations that guide it in the imposition of
> sanctions under the Federal Rules. First, the court must consider the
> conduct at issue and explain why the conduct warrants sanction.

<u>Republic of Philippines v. Westinghouse Elec. Corp</u>. 43 F.3d at 74.

Moreover:

> [H]aving evaluated the conduct at issue, the district court must
> specifically consider the range of permissible sanctions and explain why
> less severe alternatives to the sanction imposed are inadequate or
> inappropriate. Although the court need not "exhaust all other
> sanctioning mechanisms prior to resorting to its inherent power"
> (<u>Landon v. Hunt</u>, 938 F.2d at 450, 454 (3d Cir.1991)), the court must
> explain why it has chosen any particular sanction from the range of
> alternatives it has identified. <u>See Poulis</u>, 747 F.2d at 868 (sanctions
> under Fed. R. Civ. P. 16 and 37).

<u>Id</u>.

Therefore, when applying these guiding principles, and imposing the least severe

sanction the court may, in the exercise of its discretion, elect to simply impose a

nominal monetary sanction on a party whose conduct may warrant some penalty. <u>See</u>

<u>Skinner v. E.I. Du Pont De Nemours and Co.</u>, No. 07-384, 2009 WL 783329 (D.Del. March 25, 2009)(imposing nominal sanctions).

With these basic principles in mind we then turn to the Plaintiff's sanctions motion. In asking the Court to impose sanctions upon Defendants and their counsel, Plaintiff recites Defendants' conduct in connection with a court-ordered mediation proceeding and a subsequent settlement conference, which was subsequently canceled when Defendants informed the Court hours before the conference that they were unwilling to consider financial settlement of the case. With respect to the initial mediation proceedings held in May 2010, Plaintiff represents that Defendants wasted her and her counsel's time, and a mediator's time, by failing to bring someone with full settlement authority to the proceeding. Plaintiff tacitly suggests that had Defendants followed this prudent course, the confusion that resulted in both Plaintiff and the mediator believing that a full settlement had been reached could have been avoided.

In addition, Plaintiff notes that after the Court scheduled a second settlement conference at the parties' request for September 9, 2010 (Doc. 27), he expended 12 hours of time, and incurred expenses, preparing for the second settlement proceeding. Unfortunately, almost immediately prior to the conference, Defendants' counsel informed Plaintiff's counsel that her clients remained unwilling to pay any money to

17

settle the case, and she suggested that the parties contact the Court to determine whether the conference should go forward. Having been informed of Defendants' position only hours before the conference was to commence, the Court entered an order canceling the proceeding, and directed the parties to participate in a case management conference the following week. (Docs. 28, 29.)

Plaintiff argues that Defendants, through their counsel, were in violation of the Court's order that each party attend the September 9, 2009 settlement conference with a principal having full settlement authority. Although this is the way Plaintiff frames her argument, we actually understand her complaint to be that Defendants were dilatory in communicating their unwillingness to engage meaningfully in settlement talks, and that their lack of preparation and communication resulted in a waste of the Court's and counsel's time preparing for a settlement proceeding that was never expected to be useful in light of Defendants' inflexibility.

The Defendants have filed a response to this motion which is notable in what it apparently concedes, in what it confuses, and in what it contests. First, in this response (Doc. 36), the Commonwealth provided no explanation for its curious six week silence following what the Commonwealth knew to be the initial, erroneous report that this case had settled in May, 2010. The Commonwealth also does not explain in any way why it failed to comply with this Court's July 12 order directing

the parties to provide status reports regarding settlement by August 11, 2010. Similarly, the Commonwealth does not explain why it took no action to clarify the Plaintiff's August, 2010. status report, which recommended that the Court schedule a settlement conference, and noted that the Defendant concurred in this recommendation. If this assertion was untrue it was incumbent upon the Commonwealth to immediately clarify this matter. Finally, the Commonwealth does not explain why it allowed a second scheduling deadline, the September 6, 2010, deadline for submission of settlement memoranda, to lapse and only submitted its settlement memorandum at 4:21 p.m. on September 7.[6]

The Commonwealth also confuses the chronology of events in its response stating; " Before the [August 11, 2010] deadline for getting back to the Court had

---

[6]In addition, we note that the Commonwealth's response to this motion (Doc. 36) failed to disclose something which the Court regards as an important mitigating, explanatory factor in this case–the fact that counsel was facing medical challenges during the time when these events occurred. (Docs. 50 and 51.) We appreciate the belated disclosure of this information, which adds valuable context to our inquiry, and understand the dilemma which such disclosure can create for counsel, in terms of protection of counsel's personal privacy. We simply note that some discrete disclosure of these matters in a timely fashion could have enabled the parties to avoid misunderstanding, and prevented prejudice to litigants, whose rights often rest in the hands of counsel. Thus, while we are entirely understanding of counsel's privacy, we encourage counsel to always feel free to discretely but candidly alert the Court to matters which may affect the performance of counsel's duties. Armed with this information, we can work with the parties and counsel to ensure a course of litigation which is fair both to the parties, and to their counsel.

expired, . . . the Court scheduled a conference scheduled [sic] for September 9, 2010."(Doc. 36, p.3.) This assertion is not correct. In fact, the Court entered its scheduling order setting this September 9, 2010 conference on August 18, 2010, one week *after* the Commonwealth permitted this deadline to lapse without filing the status report called for by the Court. Thus, the Commonwealth's suggestion that it was denied the opportunity to file a timely status report by some hasty action on the part of the Court is simply incorrect.

Finally, in its response the Commonwealth chooses to contest several matters which merit brief comment. In their defense, Defendants assert that they did not violate any of the Rules of Civil Procedure that Plaintiff identifies in her motion, and, moreover, they did not violate any orders of the Court – even the Court order directing that all parties attend the second settlement conference with a principal having full settlement authority in the case. In this regard, Defendants note that they were prepared to attend the September 9, 2010, settlement conference with Thomas Kowalsky, the Personnel Director at SCI-Frackville and SCI-Mahanoy, who would serve as a principal with full settlement authority. Indeed, Defendants represent that Mr. Kowalsky had traveled from Frackville to Harrisburg on the morning of the day the conference was to take place, but Defendants were unchanged in their decision that they would not offer Plaintiff any financial compensation as part of a settlement.

(Doc. 36, at 6-7.) Defendants then maintain that the Court has no authority to compel a party to settle a civil lawsuit, and, accordingly, has no power to sanction a party who is unwilling to settle a case, even at the urging of a court. In sum, Defendants argue that there exists no legal basis or factual grounds that would justify an award of sanctions.

This argument fails for several reasons. First, while we agree with Defendants that they did not violate any of the rules upon which Plaintiff relies, the Defendants' conduct clearly did violate Rule 16. That rule "is the *usual vehicle* for imposing coercive or punitive sanctions in these circumstances." Taberer v. Armstrrong World Indus., Inc., 954 F.2d 888, 892, n.3 (3d Cir. 1992)(emphasis added). Furthermore, Rule 16 expressly authorizes imposition of sanctions where parties fail to comply with scheduling orders setting settlement conferences by failing to timely and properly file settlement memoranda; Grant v. Omni Health Care Systems of NJ, Inc., No. 08-306, 2009 WL 3151322 (D.N.J. Sept. 24, 2009); by failing to adequately prepare for such conferences. Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008) or by failing to disclose its true settlement posture to the court in a timely fashion leads to the unnecessary scheduling of settlement conferences and proceedings. Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722 (E.D.Pa. Sept.27, 2007). In such instances courts have sanctioned defendants who "did

not notify the Court beforehand that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and energies of the Court and Plaintiff [at the settlement conference], " <u>Karahuta v. Boardwalk Regency Corp</u>. 2007 WL 2825722 at *4(citations omitted).

Second, as a factual matter, all of these principles apply here, and permit the imposition of sanctions at the Court's discretion. In this case, the Defendants failed to abide by scheduling orders by failing to timely file status reports and settlement memoranda in August and September, 2010. The Defendants also failed repeatedly to make full and candid disclosures to the Court relating to their settlement posture, and permitted the Court to believe that this case had settled, when in fact it had not. When the mediator erroneously reported that the case had settled on May 17, the Defendants– who knew that the case had not settled–never corrected this erroneous impression, leaving it to the Plaintiff to learn, and disclose, this fact in July, 2010, six weeks after the settlement had been reported and the case dismissed. The Defendants then permitted the Court to indulge in a series of settlement conferences and orders without disclosing that their settlement posture had remained fixed and inflexible. In this setting Rule 16 imposed a duty of candor upon the Defendants to timely notify the Court of their true settlement posture.

In addition, the Defendants err when they suggest that their conduct did not violate any court order. In fact, the Defendants violated the deadlines for status reports and other submissions set by this Court in its July 12 and August 18, 2010, orders. Compliance with these deadlines, coupled with candid disclosures in these submissions, could have significantly mitigated the unnecessary delays that attended these settlement proceedings.

We thus conclude that we have the discretion under the law to impose some sanctions, and further find as a factual matter that the conduct of the Defendants would permit an award of sanctions. Indeed, we note that, with respect to these settlement discussions this case has, for months, been marked and impaired by what the Captain of Road Prison 36 so famously said in the classic film *Cool Hand Luke*: "What we've got here is failure to communicate." This case has been rife with miscommunication for the better part of one year. For example, in a letter dated April 7, 2010, the court-appointed mediator, noted that after "repeated [unsuccessful] attempts" to reach Defendants' counsel, he felt he had no choice but to schedule the mediation in order to stay within the Court's required timeframe. (Doc. 36, Ex. 1.) Thereafter, at the mediation proceeding, Plaintiff and the mediator both left the session with the understanding that a full settlement had been reached, and this fact was thereafter communicated to the Court, which in turn entered a 60-day order dismissing the case.

(Docs. 21, 22.) More than one and one-half months after the order dismissing the case had been entered, Plaintiff wrote to request a telephone conference with the Court because "Defendant now disputes the settlement." (Doc. 23.)[7]

Understanding that the parties mutually believed that further settlement proceedings would be beneficial, the Court scheduled a second settlement conference, and directed that the parties come to the conference with a principal having full settlement authority. This order was entered on August 18, 2010. Three weeks later, and only hours before that conference was to begin, Defendants first advised the Court that they were unwilling to offer any financial compensation as part of a settlement – a position they seem to have held since the failed mediation proceeding in May, 2010. With the benefit of this information, and concluding that settlement proceedings were unlikely to be fruitful given Defendants' position, the Court was constrained to cancel the conference.

We, of course, agree entirely with Defendants that the Court has no authority to require a party to settle his or her case, and the Court has never suggested as much. But we note that Rule 16 demands candor of parties in this setting. It requires more

---

[7] Although Defendants insist it was the mediator and the Plaintiff who were mistaken following the conference, we have trouble understanding why Defendants took no steps to inform the Court for six weeks that, in fact, there had been no settlement.

fulsome and candid communication from Defendants, communications which would have helped avoid unnecessary scheduling and preparation for the parties and the Court, and may well have aided the parties in moving this case towards a just and fair resolution. Had Defendants simply been candid about their position that they were, and remained, unwilling to consider any financial settlement, the Court could have avoided scheduling a second settlement conference was neither warranted nor, apparently, desired. Moreover, Plaintiff and her counsel would have been relieved from preparing for such a settlement conference, and could instead have focused on discovery and other pre-trial matters.

Yet, while sanctions are both legally and factually warranted here, we are mindful of the fact that in imposing sanctions, the Court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 1945 (3d Cir. 1988) (citation omitted). Moreover, when considering the appropriate course to follow in this case, we also recognize that this conduct, which was inexplicable when it occurred, may now be placed in its proper factual context by recent, unrelated submissions from the Defendants identifying previously undisclosed challenges which defense counsel may have been confronting at the time of these events. (Docs. 50 and 51.) Taking all of these considerations into

account we believe that "the minimum [sanction] that will serve to adequately deter the undesirable behavior" that precipitated the sanction, <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988), is a nominal award of attorneys' fees in the amount of $300, without prejudice to the Plaintiff seeking full reimbursement of these costs and fees at the close of these proceedings, if any award of such fees is appropriate at that time.

In closing, the Court will once again take the opportunity to urge the parties to commit themselves to communicating fully, candidly, and timely with one another, and with the Court, as this litigation moves forward. Clearer and more fulsome communication between counsel in this case would have helped considerably to clear up the confusion that seems to have persisted in this matter up until this point. We expect that the parties' mutual commitment to greater communication will go a long way towards ensuring an efficient and fair resolution of this action, whether through a trial or otherwise.

### III.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's first motion for sanctions (Doc. 33) is GRANTED, in part, and DENIED in part, and the Defendant Commonwealth of Pennsylvania Department of Corrections

is ORDERED to pay attorney's fees of $300 in connection with this matter to Plaintiff's counsel on or before March 4, 2011.

So ordered this 4th day of February 2011.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge