IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONICA O'DONNELL,           :
                            :     Civil Action No. 3:09-CV-1173
     Plaintiff,             :
                            :
     v.                     :     (Magistrate Judge Carlson)
                            :
PENNSYLVANIA DEPARTMENT:
OF CORRECTIONS, et al.,     :
                            :
     Defendants.            :

## MEMORANDUM

## I.   INTRODUCTION

In this action, Monica O'Donnell, a former employee of the Pennsylvania

Department of Corrections, has sued the Department and four of its current and

former officials, alleging that the Defendants violated her rights under both federal

and state law by failing to provide her with a reasonable accommodations to

address her medical needs stemming from diabetes, and by retaliating against her

in a variety of ways after she sought such accommodations.  Specifically, Ms.

O'Donnell has brought claims for alleged violations of Title I of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; the self-care provision

of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a)(1)(D); § 504 of

the Rehabilitation Act, 29 U.S.C. § 794; the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951 et seq.; and for First Amendment

retaliation, under 42 U.S.C. § 1983.  In addition to the Department of Corrections,

Ms. O'Donnell has sued Jeffrey Beard, in his official capacity as the former

Secretary of the Pennsylvania Department of Corrections; Robert Collins, in his

individual and official capacity as the current Superintendent of the State

Correctional Institution at Frackville (SCI-Frackville), where Ms. O'Donnell was

employed between June 2000 and September 2010 as a licensed and certified

teacher preparing inmates at the prison to take the General Education

Development ("GED") examination; Robert Shannon, in his individual and

official capacity as the former Superintendent of SCI-Frackville; Jeffrey Chiampi

in his individual and official capacity as the former Principal at SCI-Frackville;

and Cephus Moore in his individual and official capacity as the Human Resources

Representative of the Pennsylvania Department of Corrections.[1]

---

[1]  For simplicity, we will refer to these individual named defendants
collectively as the "Individual Defendants," and we will sometimes refer to the
Department of Corrections as the "DOC" or the "Department."

2

Following a tortuous and fitful litigation history,[2] Defendants have filed two motions for summary judgment, which are currently before the Court and which are ripe for disposition.  (Docs. 58, 65.)  For the reasons that follow, the motions will be granted in part and denied in part.

## II.   BACKGROUND[3]

Between June 2000 and September 3, 2010, Monica O'Donnell was employed by the Pennsylvania Department of Corrections at SCI-Frackville, as a

---

[2] See Doc. 21 (report of mediator indicating settlement reached); Doc. 22 (order dismissing case); Doc. 23 (letter from plaintiff's counsel requesting phone conference due to failure of settlement); Doc. 27 (order scheduling a second settlement conference with the court); Doc. 28 (order cancelling the settlement conference after the court was notified on the day of the conference that the Department of Corrections would not be offering any financial compensation to settle the action); Doc. 33 (plaintiff's first motion for sanctions relating to Defendants' conduct with respect to settlement proceedings); Doc. 39 (plaintiff's second motion for sanctions); Doc. 53 (order granting, in part, plaintiff's first motion for sanctions).

[3] To the extent possible, we have interpreted the facts submitted by the parties in the light most favorable to Plaintiff.  We must observe, however, that Plaintiff has offered little in the way of evidence either to provide direct support for many of her claims, or to place squarely in dispute almost any of the facts Defendants submit are undisputed.  We note also that Defendants have supported their factual submissions with relevant evidence.  Thus, although we have interpreted the facts in the light most favorable to Plaintiff where we are able, where an asserted fact is not disputed through competent evidence, we have accepted the fact as true for purposes of this opinion.

licensed and certified teacher preparing inmates at the prison for taking the GED.[4]

Ms. O'Donnell also suffers from diabetes, a condition that requires that she be

able to frequently monitor her glucose levels throughout the day.

In order to address her medical needs relating to her diabetes, in the fall of

2007, Plaintiff formally requested permission to bring certain medical supplies

into SCI-Frackville, and to keep them on her person at all times throughout the

day, in order to monitor her glucose levels.  (Doc. 59, ¶ 8.)  Ms. O'Donnell's

request to supervisors at SCI-Frackville was forwarded to the Department of

Corrections' ADA Committee in Camp Hill, Pennsylvania for consideration.

(Doc. 63, Kowalsky Dep. at 40-47.)  Defendant Cephus Moore served as

Chairman of the ADA Committee that considered Ms. O'Donnell's request.  (Doc.

59, ¶ 10.)

---

[4] According to the evidence submitted by the parties, Ms. O'Donnell tendered her notice of retirement to the Department of Corrections, and her retirement was deemed effective as of September 3, 2010.  In her second amended complaint, Ms. O'Donnell alleges that she was constructively discharged from her employment.  Upon a full consideration of the evidence submitted, we conclude that Plaintiff has failed to adduce sufficient evidence to support her claim that she was, in fact, constructively discharged from her employment.  Instead, we conclude that no reasonable jury could find that Ms. O'Donnell was constructively discharged, and thus find that she separate voluntarily from her employment with the Department.

In March 2008, the ADA Committee approved Ms. O'Donnell's request

insofar as she sought permission to bring medical supplies into SCI-Frackville.

SCI-Frackville is designated as a Level 4, maximum security institution that

houses inmates who have been convicted of very serious offenses.  (Id., ¶¶ 2, 3,

11.)  Thus, although the ADA Committee approved Ms. O'Donnell's request for

permission to bring these outside medical devices and materials into SCI-

Frackville, the Committee deferred to the Superintendent of the prison as to how

best to implement the Committee's decision, in light of security concerns

applicable to SCI-Frackville and its inmate population.  According to Cephus

Moore, the ADA Committee expressly did not grant Ms. O'Donnell approval to

keep the medical supplies on her person throughout the day due to security

concerns.  (Doc. 63, Moore Dep. at 25, 30.)  After Mr. Moore informed Ms.

O'Donnell in writing that the ADA Committee has approved her request for

permission to have ready access to her medical supplies, Mr. Moore had no further

contact with her.  (Id., ¶¶ 16-17.)  Furthermore, Mr. Moore had no supervisory

authority over Ms. O'Donnell's employment, (id., ¶ 24), did not interact with Ms.

O'Donnell during the course of her work at SCI-Frackville, (id., ¶ 25), and had no

personal knowledge regarding Ms. O'Donnell's interactions with other staff at

SCI-Frackville, (id., ¶ 26).  Moreover, Ms. O'Donnell never voiced a complaint to

Mr. Moore concerning her work environment at SCI-Frackville either before or

after she requested medical accommodations, although he did receive

correspondence from her lawyer asserting that the refusal to accede to Ms.

O'Donnell's requested accommodations was a violation of the ADA, which he

forwarded to DOC counsel.  (Id., ¶¶ 20, 23, 27.)

During the time that Ms. O'Donnell was requesting permission to keep her

medical supplies on her person at SCI-Frackville, Defendant Chiampi, the former

Principal at SCI-Frackville, was Ms. O'Donnell's supervisor.  (Doc. 59, ¶ 15.)

Mr. Chiampi has submitted a sworn declaration in which he attests that he took no

adverse actions against Ms. O'Donnell because of her disability or because she

requested an accommodation, or after she was granted an accommodation.  (Id., ¶¶

15-16.)[5]  Mr. Chiampi further attests that Ms. O'Donnell never once complained to

him about her work environment at SCI-Frackville, other than to express

dissatisfaction with the accommodation that was provided with respect to her

---

[5]  Plaintiff submitted a response to Defendants' statement of undisputed
facts that refers to a quotation from her own deposition in which she testified that
Mr. Chiampi became hostile to her in June 2007, after he learned that she had been
accepted into a doctoral program.  (Doc. 73, at 3.)  We have considered this
limited testimony, and find it to be insufficient to create a dispute of fact with
respect to Mr. Chiampi's testimony that he took no adverse action against Plaintiff
after she applied for medical accommodations in the fall of 2007 – months after
Plaintiff claims Mr. Chiampi had been rude to her at work.

request to keep medical supplies on her person during the workday.  (Doc. 59, ¶ 22; Chiampi Decl., ¶ 4.)

After officials with the Department of Corrections failed to approve all of her specific requests to be permitted to keep a number of medical items on her person throughout the workday at the prison, and after she was denied certain promotions and reimbursements for professional development activities, Ms. O'Donnell commenced this litigation on October 14, 2008, in the United States District Court for the Eastern District of Pennsylvania.  The action was subsequently transferred to this Court on June 19, 2009.  In her original complaint, Plaintiff brought a number of claims against the Pennsylvania Department of Corrections and certain of its supervisory officials, alleging that the Defendants collectively violated her rights under the ADA, 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §§ 971 et seq., the FMLA, 29 U.S.C. 2612(a)(1)(D), and the PHRA, 43 Pa. Const. Stat. Ann. §§ 951 et seq., by failing to accommodate her requested medical needs, and by retaliating against her in violation of the First Amendment to the United States Constitution.  Plaintiff claims that the Defendants retaliated against her by failing to promote her to other positions within the Department to which she applied, and by failing to reimburse

her for certain tuition expenses that she incurred during her employment.  Plaintiff seeks monetary damages and equitable injunctive relief.

On October 1, 2009, Plaintiff amended her complaint to include additional averments.  (Doc. 9.)  After the Defendants answered the amended complaint, the parties engaged in mandatory mediation proceedings that resulted in the mediator informing the Court that the parties had negotiated a complete settlement of the litigation. (Doc. 21.)  Accordingly, the Court entered an order dismissing the case on May 18, 2010, without prejudice to either party moving to reinstate the action within 60 days if settlement had not been consummated.  (Doc. 22.)  Ultimately, the parties were unable to resolve the litigation through settlement, and the action was reopened.  Following discussions between the Court and the parties, the Court entered a case management order setting forth a pre-trial schedule, (Doc. 31), and Plaintiff filed a second amended complaint on October 18, 2010, to add additional parties as Defendants (Doc. 32).[6]

Following additional discovery and other pre-trial litigation, Defendants filed two motions for summary judgment.  In the first motion (Doc. 58), the

_____

[6] Notably, Plaintiff retired from employment with the Department of Corrections on September 3, 2010, (Doc. 63, Attach. 2), approximately one and one-half months before filing the second amended complaint.

Individual Defendants named in this litigation[7] move for judgment in their favor.
In the second motion (Doc. 65), the Department seeks summary judgment on its
own behalf.  These motions are fully briefed and ripe for disposition.  For the
reasons that follow, the motions will be granted in part and denied in part.

## III.   <u>STANDARD OF REVIEW</u>

Federal courts are permitted to summarily adjudicate an action in order to
dispose of those claims that do not present a "genuine issue as to any material
fact," Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty
and unnecessary formality," <u>Peynado v. Sabol</u>, No. 09-355, 2010 U.S. Dist. LEXIS
134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010).  Rule 56 specifically
provides that "[t]he judgment sought should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is entitled to judgment as
a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts

---

[7]  The Individual Defendants in this case are comprised of the following:
Jeffrey Beard, the former Secretary of the Pennsylvania Department of
Corrections; Robert Collins, the current Superintendent of SCI-Frackville; Robert
Shannon, the former Superintendent of SCI-Frackville; Jeffrey Chiampi, the
former Principal of SCI-Frackville; and Cephus Moore, the Human Resources
Representative of the Pennsylvania Department of Corrections.  (Doc. 32.)  All of
the Individual Defendants have been sued in both their official and individual
capacities, with the exception of former Secretary Beard, who has been sued only
in his official capacity.  (<u>Id.</u> ¶  3.)

are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.

10

There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV.  DISCUSSION

The Defendants have filed two separate motions for summary judgment, one on behalf of the Department of Corrections itself (Doc. 65), and the other on behalf of the Individual Defendants (Doc. 58).  Because these motions generally address discrete issues, we address them separately below.

### A.    Department of Corrections

#### 1.    The Department of Corrections is Immune From Plaintiff's Claims Premised Upon the First Amendment, the PHRA, and the ADA.

The Department of Corrections first argues that it is entitled to summary judgment on all of Plaintiff's claims brought for alleged violations of the First Amendment under 42 U.S.C. § 1983, the PHRA, and the ADA because these claims are barred by the Eleventh Amendment to the United States Constitution. Because the law is well-settled that the Commonwealth of Pennsylvania is

immune from suits brought pursuant to 42 U.S.C. § 1983, the PHRA, and the

ADA, and because Plaintiff has offered no legal authority to challenge these long-

standing, and clearly established principles regarding governmental immunity, we

will grant the Department of Corrections' motion for summary judgment with

respect to these claims.

The Eleventh Amendment to the United States Constitution provides as

follows:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against of the United States by
> Citizens of another State, or by Citizens or Subjects of any
> Foreign State.

U.S. Const. amend. XI.  Subject to very narrow exceptions, the Eleventh

Amendment to the United States Constitution bars suits brought in federal court

against states and their agencies.  See Alden v. Maine, 527 U.S. 706, 750-52

(1999); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 253 (3d Cir. 2010).

Moreover, the immunity conferred to states by the Eleventh Amendment also

extends to subsidiary units such as state agencies.  Id.; Bowers v. Nat'l Collegiate

Athletic Assoc., 475 F.3d 524, 545-46 (3d Cir. 2007); see also Regents of the

Univ. of California v. Doe, 519 U.S. 425, 429 (1997); Pennshurst State School &

Hosp. v. Halderman, 465 U.S. 89, 101 (1984); Fitchik v. N.J. Transit Rail

Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (a state agency is properly

characterized as an arm of the state, and is thus "entitled to immunity from suit in

a federal court under the eleventh amendment when a judgment against it 'would

have essentially the same practical consequences as a judgment against the State

itself.'") (quoting Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,

440 U.S. 391, 401 (1979)).[8]  Although the language of the Eleventh Amendment

appears only to apply to out-of-state plaintiffs, "[t]he Supreme Court extended the

Eleventh Amendment's reach to suits by in-state plaintiffs, thus barring all suits

against non-consenting States in federal courts."  Lombardo v. Pennsylvania Dep't

of Public Welfare, 540 F.3d 190, 194 (3d Cir. 2008) (citing Hans v. Louisiana, 134

U.S. 1, 10 (1890)).  A state may consent to be sued in federal court, and thereby

waive its immunity under the Eleventh Amendment, but Pennsylvania has not

---

[8]  The Third Circuit has articulated a three-part test to apply in order to
determine whether an entity is an arm of the state for purposes of the Eleventh
Amendment.  This test examines the following three elements: (1) whether the
payment of the judgment would come from the state; (2) what status the entity has
under state law; and (3) what degree of autonomy the entity has.  See Febres v.
Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) (citing Fitchik, 873 F.2d
at 659).  There is no dispute in this case that the Pennsylvania Department of
Corrections is a state agency, and an "arm of the state" that is entitled to Eleventh
Amendment immunity, and the law is clearly settled that the Department of
Corrections shares in the Commonwealth's Eleventh Amendment immunity.  See
Lavia v. Pennsylvania, 224 F.3d 190, 194 (3d Cir. 2000)

done so, and has in fact specifically withheld its consent pursuant to statute.  See

42 Pa. Cons. Stat. Ann. § 8521(b).

The law is also clearly settled that the Eleventh Amendment bars suits

against states and state agencies alleging claims brought under three of the state

and federal statutes pursuant to which Plaintiff has brought claims against the

Department:  42 U.S.C. § 1983, Pennhurst State Hospital v. Halderman, 465 U.S.

at 101; Title I of the ADA, Board of Trustees of the University of Alabama v.

Garrett, 531 U.S. 356, 374 (2001); and pendent claims brought pursuant to the

PHRA, Patterson v. Pennsylvania Office of Inspector General, 243 F. App'x 695,

696 (3d Cir. 2007).  Because the Department of Corrections is entitled to

immunity under the Eleventh Amendment, and because the Eleventh Amendment

bars suits against non-consenting states and their subsidiary agencies for suits

under 42 U.S.C. § 1983, Title I of the ADA,[9] and the PHRA, we must conclude

---

[9] We also agree with the Department of Corrections that it is entitled to
immunity on Plaintiff's claims purportedly brought for alleged violations of the
ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553
("ADAAA").  As an initial matter, we observe that the courts of appeal – including
the Third Circuit – appear uniform in their interpretation that the ADAAA is not
retroactive but has only prospective effect after its effective date of January 1,
2009.  See Britting v. Secretary, Dep't of Veterans Affairs, slip op., 2011 U.S.
App. LEXIS 2096, 2011 WL 300240 (3d. Cir. Feb. 1, 2011); see also, Becerril v.
Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009); Lytes v. DC
Water & Sewer Auth., 572 F.3d 936, 941 (D.C. Cir. 2009); Fredericksen v. United
Parcel Serv. Co., 581 F.3d 516, 521 n.1 (7th Cir. 2009); Milholland v. Sumner

that the Department of Corrections is entitled to summary judgment on Plaintiff's

claims for relief under any of these statutes.  Accordingly, we will grant the

Department's motion with respect to Plaintiff's claims brought under each of these

federal and state statutes.

> **2.     The Department of Corrections is Entitled to Eleventh Amendment Immunity From Plaintiff's Claims Under the Family Medical Leave Act.**

The Department of Corrections also argues that it is entitled to Eleventh

Amendment immunity from Plaintiff's claims brought for alleged violations of the

Family Medical Leave Act's self-care provision, which provides leave for

employees to care for their own serious health conditions.  <u>See</u> Second Am.

---

County Bd. of Educ., 569 F.3d 562, 565-67 (6th Cir. 2009); <u>EEOC v. Agro Distrib.</u>, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009). Accordingly, to the extent Plaintiff is seeking to prosecute claims under the ADAAA for conduct that allegedly occurred prior to passage of this federal law, such claims must be dismissed.  However, regardless of the theoretical basis for Plaintiff's claims under the ADAAA, we are unaware of any changes made to the ADA by the ADAAA that would affect the application of Eleventh Amendment immunity to these claims.  The ADAAA revised the definition of disability, and provided further clarification of coverage of mitigating measures and impairments that are episodic or in remission that substantially limit major life activities while active. <u>See</u> ADAAA, Pub. L. No. 110-325, 104 Stat. 328 (codified as amended in various provisions of 42 U.S.C. §§ 12101 et seq.).  The Supreme Court made clear in <u>Garrett</u>, 531 U.S. at 374, that Congress did not abrogate state sovereign immunity under the Eleventh Amendment for claims brought pursuant to Title I of the ADA, and we conclude that <u>Garrett</u> would also apply to changes under the ADAAA.  We further observe that Plaintiff has made no compelling argument addressing Eleventh Amendment immunity under either the ADA or the ADAAA.

Compl. Count IV; 29 U.S.C. § 2612(a)(1)(D).  As with the claims discussed

above, the Department contends it is entitled to summary judgment on Plaintiff's

FMLA claim, but addresses this issue separately given the somewhat divergent

treatment that claims under the FMLA have received by the courts.

As noted above, the Eleventh Amendment generally operates to bar federal

courts from hearing suits by private parties against states or state agencies.  See,

e.g., Alden v. Maine, 527 U.S. 706, 750-52 (1999).  However,

> Eleventh Amendment immunity is not absolute . . . .  States
> and their subunits can waive immunity by taking voluntary
> action inconsistent therewith.  For instance, a State may
> waive its Eleventh Amendment immunity by consenting to
> suit.  Alternatively, Congress may require a waiver of
> immunity as a condition for receipt of federal funds, even
> though Congress could not order such a waiver directly.
> When a State participates in a federal financial assistance
> program "in light of the existing state of the law," it is on
> notice that its acceptance of federal funds may waive its
> Eleventh Amendment immunity.

Haybarger v. Lawrence Cnty. Adult Prog. and Parole, 551 F.3d 193, 198 (3d Cir.

2008) (internal citations omitted).  A State may waive its immunity, but only if it

does so expressly and unequivocally, Lombardo v. Pennsylvania, Department of

Public Welfare, 540 F.3d 190, 198 (3d Cir. 2008), but such waivers are disfavored

in the absence of clear evidence.  Haybarger, 551 F.3d at 203.  As noted above,

Pennsylvania has not consented to liability.  Furthermore, and equally important

for purposes of Plaintiff's FMLA claim, Congress has not conditioned any funding on the abrogation of sovereign immunity from FMLA self-care claims.  See Chittister v.Dep't of Cmty. and Econ. Dev., 226 F.3d 223, 226-27 (3d Cir. 2000), overruled in part by Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003). Furthermore, the Third Circuit found in Chittister that the self-care provision of the FMLA did not constitute a valid exercise of Congress's power to enforce the Fourteenth Amendment to the United States Constitution.  Id. at 229.

In 2003 the United States Supreme Court found that Congress had, in fact, validly abrogated state sovereign immunity with respect to the *family-care* provisions of the FMLA set forth in 29 U.S.C. § 2612(a)(1)(C).  See Hibbs, 538 U.S. at 739.  Notwithstanding this holding, however, courts interpreting Hibbs have been uniform in concluding that the central holding in Hibbs does not apply to the self-care provisions of the FMLA set forth in 29 U.S.C. § 2612(a)(1)(D). See Banks v. Court of Common Pleas FJD, 342 F. App'x 818, 821(3d Cir. 2009) ("Although the 'family-care' provisions of the FMLA were upheld by the Supreme Court in [Hibbs], private suits still may not be brought against states where the self-care provisions of the Act are implicated."); see also Toeller v. Wisconsin Dep't of Corr., 461 F.3d 871, 878-79 (7th Cir. 2006); Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities, 422 F.3d 392, 400-01 (6th Cir.

2005); Brockman v. Wyoming Dep't of Family Servs., 342 F.3d 1159, 1164-65

(10th Cir. 2003).  Because we understand Plaintiff's complaint to be alleging

violations of the FMLA's self-care provision, and because the Eleventh

Amendment bars claims against the state predicated on alleged violations of the

self-care provision, we agree that the Department is immune from Plaintiff's

claims for alleged violations of the FMLA.  Accordingly, the Department is

entitled to summary judgment on Plaintiff's FMLA claims.

### 3.    Plaintiff's Claims Against the DOC for Alleged Discrimination Under the Rehabilitation Act.

The Department of Corrections next argues that it is entitled to summary

judgment in its favor on all of Plaintiff's claims that she was discriminated against

in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 704(a) when the

Department failed to accommodate her medical needs.[10]  Plaintiff appears to be

---

[10]  The Department acknowledges that it is not entitled to Eleventh
Amendment immunity from Plaintiff's discrimination and retaliation claims
brought under the Rehabilitation Act, and the Third Circuit has previously held
that the Department of Corrections is subject to suit under the Act because the
Commonwealth of Pennsylvania accepts federal funds and provides these funds to
the Department of Corrections.  See Koslow v. Pennsylvania, 302 F.3d 161, 172
(3d Cir. 2002) ("The Commonwealth of Pennsylvania accepted federal financial
assistance under SCAAP, and provided these federal funds to the Department of
Corrections.  Therefore, the Commonwealth of Pennsylvania waived immunity for
§ 504 claims against its Department of Corrections under the Rehabilitation
Act.").

claiming that the Department violated the Rehabilitation Act by failing to provide

a reasonable accommodation for her diabetic condition, and by failing to engage in

an interactive process with the Plaintiff to determine a reasonable accommodation

that would meet her needs and comport with SCI-Frackville's institutional safety

considerations.  (Compl., Count III, ¶ 84.)  Thus, Plaintiff claims that the

Department is liable under the Rehabilitation Act for discriminating against her by

failing to provide a reasonable accommodation, and by retaliating against her after

she pursued such an accommodation at SCI-Frackville.  The Department does not

dispute that Ms. O'Donnell suffers from a disabling condition for purposes of the

Rehabilitation Act, and concedes that she sought permission to bring medical

supplies necessary to monitor her glucose levels into the prison, and to keep these

materials on her person throughout the day, as an accommodation.  However, the

Department argues that officials at SCI-Frackville offered Ms. O'Donnell a

reasonable accommodation – albeit, not the precise accommodation that she or her

doctors sought – and, therefore, the undisputed facts demonstrate that the

accommodation offered to Ms. O'Donnell was reasonable as a matter of law.

Additionally, the Department suggests that the Court should defer entirely to the

judgment of the Superintendent of SCI-Frackville, and, therefore, conclude that

his decision to require Plaintiff to keep her glucose-monitoring supplies in a

secure room located a short distance from her classroom at SCI-Frackivlle was reasonable.  On this basis, the Department contends that it is entitled to summary judgment in its favor.  We disagree.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Rehabilitation Act defines "disability" to mean a "physical or mental impairment that constitutes or results in a substantial impediment to employment" or "a physical or mental impairment that substantially limits one or more major life activities."  29 U.S.C. § 705(9).

Thus, the Rehabilitation Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007) (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)).  In order to make out a prima facie case of discrimination under the Act,[11] a plaintiff must establish the following elements:

---

[11]  The Rehabilitation Act serves the same purposes as other federal laws prohibiting employment discrimination, and for that reason the Third Circuit has held that the three-step burden-shifting analysis established by the Supreme Court

"(1) that he or she has a disability; (2) that he or she is otherwise qualified to

perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) that he or she was nonetheless

terminated or otherwise prevented from performing his job."  Wishkin, 476 F.3d at

184 (3d Cir. 2007) (quoting Shiring, 90 F.3d at 831).  This test is a matter of law

to be decided by the court, "but the prima face test remains flexible and must be

tailored to fit the specific context in which it is applied."  Wishkin, 476 F.3d at

185 (citing Sarullo v. United States Postal Serv., 352 F.3d 789, 797-98 (3d Cir.

2003) (per curiam)).

---

in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793-94 (1973), applies to
discrimination claims brought under the Rehabilitation Act.  See Wishkin, 476
F.3d at 185.  Under this test, the first step requires that the plaintiff establish a
prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.
Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to
articulate a "legitimate, non-discriminatory reason" for the plaintiff's treatment.
Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell
Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108
(3d Cir. 1997).  The defendant need only prove that its actions could have been
motivated by the proffered, legitimate, nondiscriminatory reason; proof of actual
causation is not required.  Iadimarco, 190 F.3d at 157.  Once the defendant has
discharged this burden, the plaintiff must "prove by a preponderance of the
evidence that the legitimate reasons proffered by the defendant were not its true
reasons, but were a pretext for discrimination."  Jones v. School Dist., 198 F.3d
403, 410 (3d Cir. 1999).  The plaintiff can meet this burden by presenting
evidence from which a reasonable factfinder could "either (1) disbelieve the
employer's articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or determinative
cause of the employer's action."  Keller, 130 F.3d at 1108.

At this point we pause to observe that the parties' competing briefs do not so much address one another as they speak past one another with respect to Plaintiff's discrimination and failure-to-accommodate claims. For her part, Plaintiff spends considerable time in her brief in opposition to the Department's motion arguing that she does, in fact, have a condition that constitutes a disability for purposes of the Rehabilitation Act. For its part, the Department never contests this point. Instead, with respect to Plaintiff's discrimination claim, the Department argues only that Plaintiff's claim fails because the accommodation offered to the Plaintiff was reasonable as a matter of law, and because no reasonable factfinder could conclude otherwise. Because the parties have not placed any other issue in dispute concerning Plaintiff's claim of discrimination, we consider only whether these are disputed issues of fact which preclude summary judgment on Plaintiff's claim that Defendants' failed to provide a reasonable accommodation that would permit Plaintiff to survive the Department's motion for summary judgment.

A plaintiff who claims that her employer should have provided a reasonable accommodation bears the burden of showing that the accommodation at issue is possible. See Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 614 (3d Cir. 2006). If a plaintiff makes such a showing, the burden shifts to the defendant to prove that the requested accommodations "are unreasonable, or would cause an

undue hardship on the employer." Id.  In the instant case, Plaintiff sought

permission to keep certain medical supplies needed to monitor her glucose levels

with her at all times during the workday, including the time during the day when

she was alone in a classroom with as many as seventeen convicted felons.

The Department agreed that Plaintiff should be granted permission to bring

medical supplies into the prison during the day, but delegated to the

Superintendent at SCI-Frackville the responsibility for determining how this

accommodation should be implemented.  Upon consideration, officials at SCI-

Frackville determined that Plaintiff would be permitted to keep her medical

supplies stored some distance away from her classroom at SCI-Frackville, where

they could be kept secured in a locker behind a locked door.  Plaintiff was also

informed that she could have access to these supplies at any time she needed

during the day, and Plaintiff has testified that it took her as little as two minutes to

walk to the secure room where her supplies could be stored.  (Doc. 63, Attach. 1,

O'Donnell Dep. at 152-53.)

Relying on a handful of cases holding that courts should be deferential to

the judgment of prison administrators with respect to institutional safety concerns,

Defendants insist that Ms. O'Donnell's position "would require that this Court

defer not to SCI-Frackville prison officials but to her personal physicians [who

23

urged officials to permit Plaintiff to keep the diabetes-related medical supplies on her person during the workday]." (Doc. 67, at 18-19.)  Without citation to any authority, Defendants conclude that "[n]either § 504 nor any other discrimination provision requires that."  (Id., at 19.)

The Court is mindful of the substantial challenges that prison officials face in attempting to balance the need for institutional safety against the various accommodations that are requested by inmates and employees alike to address medical issues.  However, we do not agree with Defendants – and Defendants have not established in their briefs – that the Court is required as a matter of law to simply accede to any judgment of a prison administrator with respect to workplace accommodations to address medical needs.  Similarly, we do not agree that the Court must, as a matter of law, find that the compromise proposed by officials at SCI-Frackville was reasonable and sufficient as a matter of law to constitute an accommodation that addressed adequately Ms. O'Donnell's serious medical needs against the countervailing security interests of SCI-Frackville's administrators. Finally, we disagree that denying Defendant's motion would be tantamount to the Court deferring to the judgment of Ms. O'Donnell's doctors over the judgment of prison administrators.  To the contrary, the Court has merely concluded that the record reveals a dispute of fact with respect to the reasonableness of the

24

accommodation offered to Ms. O'Donnell, and whether such compromise accommodation was adequate to address a medical need that her doctors advised Department officials was a "matter of life and death." (Doc. 88, ¶ 8.) In reaching this conclusion, we emphasize the very limited nature of our ruling. We simply do not find that Defendants have pointed to undisputed evidence in the record that establishes that the accommodation offered to Ms. O'Donnell was tailored in order to address institutional safety concerns presented by the medical items Ms. O'Donnell claims to have needed to keep with her at all times, or to explain why the particular medical items that Plaintiff needed to monitor her glucose levels throughout the day presented serious security risks.

Instead, we observe that, in general, "[t]he question of whether a proposed accommodation is reasonable is a question of fact." Turner, 440 F.3d at 611 n.4 (quoting Buskirk v. Apollo Metals, 307 F.3d 160, 170 (3d Cir. 2002); citing Skerski v. Time Warner Cable Co., 257 F.3d 273, 286 (3d Cir. 2001)). In this case, Plaintiff sought permission to bring into SCI-Frackville, and keep on her person throughout the workday, a small number of medical supplies, and she supported this request with letters from her medical doctors who urged Ms.O'Donnell's employer to permit her to keep these items with her throughout

the day, going so far as to emphasize that her request to keep these items with her could be "a matter of life or death."  (Doc. 88, ¶ 8.)

Although this is a close issue, upon consideration of the evidence upon which the Department relies, and noting that the Commonwealth has not presented competent proof relating to critical facts at issue here, we conclude that questions of fact exist with respect to the reasonableness of Ms. O'Donnell's requested accommodation, and about the Department's position that permitting her to carry glucose-monitoring supplies on her person would present a grave and impermissible risk to institutional safety concerns at SCI-Frackville.  Because questions regarding the reasonableness of a particular accommodation are typically fact questions, Turner, 440 F.3d at 611 n.4, and because we find that the Department has not demonstrated that it is entitled to judgment as a matter of law on Ms. O'Donnell's claim of discrimination under the Rehabilitation Act, we will deny the Department's motion for summary judgment with respect to Ms. O'Donnell's discrimination claim.

### 4.     Plaintiff's Claim Against the DOC for Alleged Retaliation under the Rehabilitation Act.

The Department next argues that regardless of Plaintiff's claims regarding the reasonableness of the accommodation that was offered to her, summary

judgment is nevertheless warranted on Plaintiff's claim that the DOC retaliated

against her for pursuing relief under § 504 of the Rehabilitation Act.  Upon

consideration, we agree.

The elements of a retaliation claim brought under 42 U.S.C. § 1983,

predicated on the First Amendment, and one brought for alleged violations of the

Retaliation Act are the same.  Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d

Cir. 2007).  In order to establish a prima facie case of retaliation under the

Rehabilitation Act, a plaintiff must show:

> (1) protected employee activity; (2) adverse action by the
> employer either after or contemporaneous with the
> employee's protected activity; and (3) a causal connection
> between the employee's protected activity and the
> employer's adverse action. . . . If an employee establishes
> a prima facie case . . . the burden shifts to the employer to
> advance a legitimate, non-retaliatory reason for its adverse
> action . . . . If the employer satisfies its burden, the plaintiff
> must be able to convince the factfinder both that the
> employer's proffered explanation was false, and that
> retaliation was the real reason for the adverse employment
> action.

Ozlek v. Potter, 259 F. App'x 417, 422 (3d Cir. 2007) (quoting Krouse v.

American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) (considering claim

of retaliation under the ADA); see also Lauren W., 480 F.3d at 267.  In order for

an adverse action to be actionable as retaliation, it must be sufficient to deter an a

person of ordinary firmness from exercising her right to engage in the protected activity.  Cf. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (addressing First Amendment retaliation standard).  To establish the requisite causal connection, a plaintiff is typically required to prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W., 480 F.3d at 267.  (citations omitted).  In the absence of that proof, the plaintiff is required to show that from the "'evidence gleaned from the record as a whole' the trier of fact should infer causation."  Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).  The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements.  Id.

In this case, judged against the foregoing standards, we find that Ms. O'Donnell has failed to present sufficient evidence either to support her claims that she suffered unlawful retaliation because she engaged in protected activity and sought workplace accommodations, or to create a disputed issue of material fact that would permit her to try these claims to a jury.  In particular, Ms. O'Donnell has failed to come forward with any evidence to show that the DOC took any adverse action with respect to her employment, or that DOC or any of the

named Defendants took any action that would have caused a person of ordinary firmness to refrain from engaging in protected activity.

Ms. O'Donnell has levied a number of general allegations against the Defendants in an effort to claim that their conduct was retaliatory, but the evidence to support these claims is absent, and that absence is now fatal to the claims. Thus, although Ms. O'Donnell claims that Jeffrey Chiampi denied her promotions and denied reimbursement for graduate school tuition or other expenses, she has offered no evidence to support these claims.  Indeed, these claims are contradicted by Mr. Chiampi's sworn testimony that he never took adverse action against Ms. O'Donnell of any kind, and that he had no personal role in any decisions with respect to promotions that Ms. O'Donnell sought, or for reimbursement of expenses.  (Doc. 63, Attach. 5, Chiampi Decl. ¶¶ 3, 9.)  The evidence of record simply provides no support for Ms. O'Donnell's claims that Mr. Chiampi retaliated against her.

With respect to Ms. O'Donnell's claims that she was turned down for a promotion and denied certain reimbursements, Defendants have submitted evidence to discredit entirely Plaintiff's claim that these actions were retaliatory. Defendants have submitted evidence to show that none of the named Defendants played any role in the decisions made with respect to denying promotion or tuition

reimbursement.  Additionally, Defendants have submitted evidence to demonstrate that Ms. O'Donnell's non-selection for the position of School Principal at SCI-Coal was not retaliatory, but was instead driven by the considered findings of the four-member interview panel – none of whom are parties in this case – that neither of the candidates who applied for the job possessed the requisite knowledge and experience for the job.  (Doc. 63, Attach. 11, Ellett Decl. ¶ 9, 11.)  Furthermore, the Commonwealth observed that in accordance with certain applicable civil service rules, the panel would have been compelled to recommend the second applicant over Ms. O'Donnell, because while both applicants satisfied the minimum requirements, the other applicant was a veteran, and that applicable rules, therefore, actually prevented the panel from recommending Ms. O'Donnell over her.[12]  (Id., ¶ 18.)  Furthermore, Ronda Ellett, the Deputy Superintendent for Centralized Services at SCI-Coal, and one of the members of the four-member

_____

[12]  Specifically, this decision would have been compelled by the Civil Service Rule of Three and Veteran's Preference Act.  The Civil Service Rule of Three requires employers filling a vacant position to select from the three highest ranked eligible persons who passed the relevant examination.  (Doc. 63, Attach. 11, Ellett Decl., ¶ 14.)  The Veteran's Preference Act provides for the addition of ten points to the score of a veteran who has passed a civil service appointment or promotion examination.  (Id., ¶ 15.)  The second applicant for the Principal job at SCI-Coal was a veteran and scored among the top three scores.  (Id., ¶¶13, 16.)  With the addition of the 10 points for her service as a veteran, the second applicant would have had the highest score.  (Id., ¶ 17.)

selection team, has attested that Ms. O'Donnell's disability played no part in the

panel's decision.  Upon consideration of this evidence – which O'Donnell has not

rebutted in any fashion – we agree that Plaintiff's claim regarding this promotion

denial do not support her claim of retaliation.

We reach a similar conclusion with respect to Ms. O'Donnell's claims that

she was improperly denied certain requested tuition reimbursements.  As

Defendants demonstrate through sworn testimony, decisions regarding an

employee's requests for reimbursement for tuition are governed by the collective

bargaining agreement covering the position of the employee making the request.

(Doc. 63, Attach. 12, Davy Decl. ¶ 5.)  Because Ms. O'Donnell was employed as a

Basic Education Teacher, she was a member of the Correctional Institution

Vocational Education Association ("CIVEA").  (Id., ¶¶ 5, 6.)  According to the

sworn declaration of the Department's Director of the Bureau of Education,

decisions regarding reimbursement of expenses are made by the Bureau of

Education, and personnel at the prison level have no involvement in the decisions.

(Id., ¶¶ 4, 13.)  The only evidence of record shows that decisions not to reimburse

certain of Ms. O'Donnell's expenses were not made at the prison level, and were

not based on Ms. O'Donnell's disability or request for accommodation.  (Id., ¶¶

14-16, 24.)  Instead, the documentation on her requests indicate that they were

denied either because they were not timely submitted, or because they were not

considered to be educationally appropriate.  (Id., ¶¶ 21-22.)  In contrast to this

evidence, Ms. O'Donnell has nothing other than her own speculation to support

her contention that adverse decisions with respect to reimbursement for expenses

constituted unlawful retaliation.

Upon full consideration of the record before the Court, we find that Plaintiff

has failed to come forward with evidence to support her claims against the DOC

for retaliation under the Rehabilitation Act, and summary judgment will be entered

in the Department's favor on this claim.

**B.**   **Individual Defendants**

**1.**   **The Individual Defendants are Entitled to Summary Judgment on O'Donnell's Claims Against them in their Official Capacities Under 42 U.S.C. § 1983, the ADA, PHRA, and the FMLA Because They are Immune From Suit in their Official Capacity Pursuant to the Eleventh Amendment.**

As noted above, the Eleventh Amendment bars suits against the

Commonwealth and its subsidiary agencies brought pursuant to the ADA, the

PHRA, and the FMLA.  Similarly, a suit brought against an individual acting in

his or her official capacity is deemed to be a suit against the state and, therefore,

also is barred by the Eleventh Amendment.  Will v. Michigan Dept. of State

<u>Police</u>, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1996).  This broad grant of immunity from damages claims in federal court admits of only two exceptions: First, a state can waive its immunity, <u>see</u> <u>Alden v. Maine</u>, 527 U.S. 706, 755 (1999), or, second, Congress can expressly abrogate that state immunity, provided that Congress "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." <u>Bd. of Trustees of the Univ. of Alabama v. Garrett</u>, 531 U.S. 356, 363 (2001).  In this case, as we have noted, Congress has not abrogated Pennsylvania's immunity from suit under any of these laws, and the Commonwealth has not waived its immunity to suit.  For those reasons, we have found that O'Donnell's claims against the Commonwealth for alleged violations of the ADA, PHRA, FMLA, and the First Amendment under 42 U.S.C. § 1983 are barred.  This same rule compels a conclusion that the claims against the Individual Defendants in their official capacities under these statutes are also barred.

We do note that in her second amended complaint, Plaintiff claims to be seeking prospective injunctive relief, although what precise form of relief she is seeking is not made clear in the complaint.  This claim for relief could have

relevance to Plaintiff's claims against the Individual Defendants in their official

capacities, because the law recognizes an exception to the Eleventh Amendment

for claims brought against state officials in their official capacities for prospective

injunctive relief.  This exception to the Eleventh Amendment immunity provides,

federal courts with authority to issue injunctions against state officers where there

is evidence of ongoing violations of federal law and the injunction will afford a

plaintiff prospective relief from the illegal state action. See Alden v. Maine, 527

U.S. 707, 757 (1999); Seminole Tribe, 517 U.S. at 73; see also Ex parte Young,

209 U.S. 123, 159-60 (1908).  The United States Court of Appeals for the Third

Circuit has explained the holding of Ex parte Young as follows:

> In Ex parte Young, the Supreme Court found a state
> official acting in violation of the Constitution or federal
> law acts ultra vires and is no longer entitled to the state's
> allows immunity from suit. The legal fiction tly against the state while
> permitting individual actions against officials violating federal law.

Koslow v. Pennsylvania, 302 F.3d 161, 177 n.20 (3d Cir. 2002).  Essentially, Ex

parte Young provides a means for plaintiffs to seek prospective injunctive relief

for ongoing violations of federal law by bringing an official capacity action

against state officials, rather than against a state directly, without running afoul of

the Eleventh Amendment:

34

> Unless a State has waived its Eleventh Amendment
> immunity or Congress has overridden it, however, <u>a State</u>
> <u>cannot be sued directly in its own name regardless of the</u>
> <u>relief sought</u>.   Thus, implementation of state policy or
> custom may be reached in federal court only because
> official-capacity actions for prospective relief are not
> treated as actions against the State.

<u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (emphasis added) (citations

omitted).

In this case, Plaintiff has sued the Individual Defendants in their official

capacities, and purports to be seeking prospective injunctive relief.  Plaintiff's

claims for injunctive relief, however, are unable to survive given an undisputed

fact of this case, namely, the fact that Plaintiff is no longer employed by the

Department of Corrections and thus appears to have no standing to seek injunctive

relief relating to her employment or employment conditions.  Although the second

amended complaint is long on generalities and short on specifics, we understand

Ms. O'Donnell to be claiming that she was constructively discharged from her

employment, and that she seeks reinstatement to her former position as one of the

forms of equitable relief in this case.  Thus, in order to get around the fact that she

is no longer working for the DOC and, therefore, would appear to have no grounds

to seek forward-looking injunctive relief relating to her employment, and although

she tendered a notice of retirement to the Department of Corrections effective

September 3, 2010, (Doc. 63, Attach. 2), Ms. O'Donnell is alleging that she was constructively discharged from her employment because the conditions of that employment became unbearable.  This claim has substantial potential relevance to this case, because if Ms. O'Donnell's claim for constructive discharge has merit, she could pursue a claim for reinstatement, which is a form of equitable relief that courts recognize as cognizable under the Ex parte Young exception to Eleventh Amendment immunity.

The Third Circuit has embraced an objective test to determine whether an employee can maintain a claim for constructive discharge, and this test requires that courts "determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."  Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010) (quoting Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001)).  Some factors that the Third Circuit has found to be relevant to the issue of constructive discharge are whether the employer "(1) 'threatened [the employee] with discharge' or 'urge[d] or suggest[ed] that she resign or retire' (2) demote[d] her,' (3) reduce[d] her pay or benefits,' (4) 'involuntarily transferred [her] to a less desirable position,' (5) altered her 'job responsibilities,' or (6) gave 'unsatisfactory job evaluations.'"  Colwell, 602 F.3d at 503 (quoting Clowes v. Allegheny Valley

Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993)).  The record in this case contains no evidence that would show that any of these circumstances existed in this case.

Instead, Ms. O'Donnell seems to argue that she felt subjectively that she was forced to resign from her employment, "[b]ecause [she felt] that [she] was pushed to the point where [she] had no choice."  (Doc. 89, ¶ 1.)  Plaintiff offers only this subjective assessment that she was no longer able to care for herself – roughly two and one-half years after she had been granted permission to bring her glucose-monitoring supplies – and that her glucose levels were becoming unstable. (Id.)  Following a thorough review of the record, this subjective testimony appears to represent the sum total of the proof Plaintiff has developed in support of her constructive discharge claim.

Upon consideration, we conclude that the proof offered is too subjective, limited, and vague to create a triable issue with respect to a claim for constructive discharge.  In this regard, we note that "the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)).  Moreover, the record contains uncontradicted evidence that despite Ms. O'Donnell's claim that she felt her work environment had become unbearable, she never informed any official at SCI-

37

Frackville or the Department about her allegedly changed circumstances or aggravated health concerns.  (Doc. 63, Attach. 7, Kowalsky Decl. ¶ 20.)  Indeed, Department officials attested that Ms. O'Donnell was performing satisfactorily and would have remained employed at SCI-Frackville had she not resigned in September 2010. (Doc. 63, Attach. 10, Shannon Decl. ¶ 26; Attach. 9, Collins Decl. ¶ 9.)

In our view, this is a critical failure of proof by the Plaintiff, who does not show that the Defendants were ever placed on notice that their decisions in 2007 had made O'Donnell's employment unbearable in 2010.  Given the paucity of proof that Ms. O'Donnell has offered in support of her claim that she was constructively discharged from her employment with the Department, we conclude that no reasonable juror could find that Ms. O'Donnell's subjective assessment of her employment circumstances demonstrated that her workplace was so unbearable that a reasonable person in her position would have felt compelled to resign.  See Colwell, 602 F.3d at 503.  Accordingly, we find that Plaintiff's claim for subjective discharge must be dismissed for lack of sufficient evidence.

Because we find that Ms. O'Donnell's claim for subjective discharge is without merit and must be dismissed, we must consider whether Ms. O'Donnell has any grounds for seeking prospective injunctive relief against the Individual

Defendants in their official capacities, in accordance with <u>Ex parte Young</u>.  Upon

consideration, we conclude that she does not.  In a similar case, the United States

Court of Appeals for the District of Columbia Circuit found that although the

plaintiffs had claimed they were constructively discharged, the evidence did not

support their contention, and they were found to have resigned voluntarily.  <u>Taylor</u>

<u>v. FDIC</u>, 132 F.3d 753, 767 (D.C. Cir. 1997).  On the basis of this finding, the

court held that the plaintiffs lacked standing under Article III to the United States

Constitution to pursue their claims for equitable injunctive relief seeking

reinstatement.  <u>Id.</u>  Additionally, the court found that the voluntary nature of the

plaintiffs' separation from employment was fatal to the merits of their claim for

reinstatement on the basis of constructive discharge.  <u>Id.</u>

   We find that the sound reasoning of <u>Taylor</u> is equally applicable to the

disposition of Ms. O'Donnell's claims against the Individual Defendants in their

official capacities, in which she seeks prospective injunctive relief relating to the

conditions of employment that she voluntarily rescinded.  We thus conclude that

because Plaintiff's claims for constructive discharge lack merit, her claims for

reinstatement and for other unspecified injunctive relief relating to that

employment have no basis.  Thus, although we recognize that <u>Ex parte Young</u>

provides a vehicle to allow a plaintiff to pursue forward-looking injunctive relief

against state officials in their official capacities as an exception to the Eleventh Amendment, we conclude that <u>Ex parte Young</u> has no application to the facts and claims in this case. Accordingly, we find that the Individual Defendants are entitled to summary judgment on Plaintiff's claims against them in their official capacities for equitable relief under the ADA, the PHRA, the FMLA, and § 1983.

Because we have found that O'Donnell's claims against the Department of Corrections for alleged violations of the ADA, PHRA, FMLA and the First Amendment under 42 U.S.C. § 1983 are barred by the Eleventh Amendment; and because Plaintiff's claims against the Individual Defendants in their official capacities for alleged violations of these laws are the equivalent of suits against the Commonwealth, these claims are also barred and the Individual Defendants are entitled to summary judgment on Plaintiff's claims against them in their official capacities for alleged violations of the ADA, PHRA, FMLA, and the First Amendment under 42 U.S.C. § 1983.

> **2.    Claims Against the Individual Defendants in the Individual Capacities for Alleged Violations of the ADA, the Rehabilitation Act, and the PHRA.**

As Defendants argue, the law is well-established in the Third Circuit that parties cannot be held liable in their individual capacities under Title I of the ADA or under § 504 of the Rehabilitiation Act, and for some claims brought under the

PHRA.  See A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007)

("Suits may be brought pursuant to [the Rehabilitation Act] against recipients of

federal assistance, but not  against individuals."); Koslow v. Pennsylvania, 302

F.3d 161, 178 (3d Cir. 2002) (no individual liability under the ADA); Chatterjee v.

Sch. Dist. of Phila., 170 F. Supp. 2d 509, 515-16 (E.D. Pa. 2001) ("[I]ndividuals

are not liable in their individual capacities under . . . the PHRA.").  See also

Walter v. Cumberland Valley Sch. Dist., No. 4:08-cv-1586, 2010 U.S. Dist.

LEXIS 57177, at *20 (M.D. Pa. June 10, 2010) (observing that no liability exists

under, inter alia, the ADA and PHRA).  Plaintiff offers no compelling argument in

opposition to the Individual Defendants' argument that they cannot be held liable

in their individual capacities under any of the cited statutes.

Upon consideration, we find it clear that individuals are not considered to

be employers under the Title I of the ADA, and because neither the ADA nor the

Rehabilitation Act imposes liability upon individuals, we will grant the Individual

Defendants' motion for summary judgment on Plaintiff's claims against them in

their individual capacities for alleged violations of these statutes.

However, we are less certain with respect to Plaintiff's claims against the

Individual Defendants for alleged violations of the PHRA.  In her second amended

complaint, Plaintiff alleges that "Defendants Moore, Shannon, and Chaimpi [sic]

41

individually aided and abetted in the wrongful actions alleged herein," including

acts of discrimination and retaliation.  (Doc. 32, Second Am. Compl., ¶ 104.)

Upon consideration of relevant caselaw, we conclude that a plaintiff can, in certain

circumstances, make out a claim against an individual defendant for violations of

the PHRA by aiding and abetting conduct proscribed under the statute.

Furthermore, because Defendants have offered no argument that Plaintiff's claims

for violations of the PHRA against the Individual Defendants should be dismissed

for any reason other than to assert that there can be no individual liability under

the statute, we will deny the motion for summary judgment with respect to

Plaintiff's PHRA claims against the Individual Defendants.  We explain briefly.

The PHRA forbids "any person . . . to aid, abet, incite, compel, or coerce the

doing of any . . . unlawful discriminatory practice . . . or to attempt, directly or

indirectly, to commit any . . . unlawful discriminatory practice."  43 Pa. Cons. Stat.

Ann. § 955(e).  "A PHRA plaintiff may advance individual liability claims against

supervisory employees who bear responsibility for implementing an allegedly

unlawful discriminatory practice."  D'Altilio v. Dover Twp., No. 1:06-CV-1931,

2009 U.S. Dist. LEXIS 83663, at *45 (M.D. Pa. Sept. 14, 2009); see also Carlton

v. City of Phila, No. Civ. A. 03-1620, 2004 U.S. Dist. LEXIS 5569 (E.D. Pa. Mar.

30, 2004) (stating that supervisory employees can be held liable based upon "the

theory that . . . [they] share the discriminatory purposes and intent of the employer.").  Furthermore, an individual may be liable under § 955(e) either as a result of his own discriminatory conduct, or for "refusing to take prompt and remedial action against any discrimination suffered by" an employee.  See Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996).  Because Plaintiff appears to be proceeding on a theory that the Individual Defendants aided and abetted conduct that violated the PHRA with respect to Plaintiff; and because we have found there to be disputed issues of fact with respect to Plaintiff's claims regarding the adequacy of the accommodations provided for her disability; we conclude that Defendants have not sustained their burden of demonstrating that they are entitled to summary judgment on Plaintiff's PHRA claims and Defendants' motion for summary judgment will be denied.

While the factual strength of Plaintiff's claims under the PHRA is entirely unclear, we are mindful that at this stage Defendants have moved for summary judgment, and they have not met their burden of proving that summary judgment in warranted with respect to Plaintiff's claim for relief under the PHRA since they

have simply – and erroneously – asserted that this statute does not apply to

individuals who are alleged to have aided and abetted acts of discrimination.[13]

Accordingly, Defendants' motion will be granted with respect to Plaintiff's

claims for alleged violations of the ADA and the Rehabilitation Act that are

brought against the Individual Defendants in their individual capacities.

Defendants' motion will be denied with respect to Plaintiff's claims against the

Individual Defendants for allegedly aiding and abetting violations of the PHRA.[14]

**3.     Defendant Chiampi is Entitled to Summary
         Judgment on Plaintiff's Claims that he Interfered
         with Her Rights Under the FMLA**.

---

[13]   The parties are hereby placed on notice that the Court intends to address
this claim specifically during the pre-trial conference, and will ask Plaintiff for an
offer of proof with respect to this claim.  The Court has been unable to determine
from the evidence submitted thus far the way in which Plaintiff intends to prove
her claims for alleged violations of the PHRA.  Nevertheless, Defendants' motion
will be denied at this time because they have not sustained their burden of
showing that Plaintiff cannot prevail on this claim.

[14]   We observe that Defendant Beard was sued only in his official capacity.
(Doc. 32.)  Thus, Plaintiff's claims for alleged violations of the PHRA will be
permitted to go forward only with respect to Defendants Collins, Shannon,
Chiampi, and Moore, and Plaintiff will be expected at the pre-trial conference to
explain the basis for her claims against these Defendants, and to identify the
evidence that will be employed to prove her claims against them for alleged
violations of the PHRA.

In Count IV of the second amended complaint, Plaintiff alleges that Defendant Chiampi, the former principal at SCI-Frackville, interfered with her rights under the FMLA.  Defendant Chiampi argues that he is entitled to summary judgment on this claim because there is no evidence that Plaintiff was ever denied leave under the FMLA, or that she otherwise suffered interference with her rights under the statute.  We agree.

The FMLA entitles eligible employees to "12 workweeks of leave during any 12-month period" if the employee has a qualifying serious health condition.  See 29 U.S.C. § 2612(a)(1)(D).  The FMLA expressly provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any entitlement guaranteed by the statute.  29 U.S.C. § 2615(a)(1).  In order to assert a cognizable claim for interference with the FMLA, "an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits."  Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007).  "An employer interferes with the exercise of the FMLA by refusing to authorize FMLA leave or 'discouraging an employee from using such leave.'"  Majewski v. Fischi, 372 F. App'x 300, 305 (3d Cir. 2010) (quoting 29 C.F.R. § 825.220(b)); see also DiIorio v. Neshaminy Manor, 319 F. App'x 115, 117 (3d Cir. 2009) ("The FMLA

45

prohibits an employer from interfering with, restraining or denying an employee his rights under the FMLA.") (citing 29 U.S.C. § 2615(a)(1)).

In this case, it appears that Plaintiff is claiming that Defendant Chiampi interfered with Plaintiff's rights under the FMLA by falsely informing her that she had no rights under the statute.  Essentially, Plaintiff is claiming – with virtually no factual detail – that Defendant Chiampi made misstatements to her about the law governing the FMLA.  Plaintiff never alleges that she was denied any leave to which she was entitled under the FMLA – indeed, Plaintiff does not even clearly allege in the second amended complaint that she applied for leave under the FMLA, or that she was denied leave for which she applied and to which she was entitled.[15]  Even if Plaintiff had clearly alleged a claim for retaliation under the FMLA, we find that she has simply failed to come forward with any evidence to support such a claim.  Although we acknowledge that the FMLA recognizes a cause of action for interference, in this case Plaintiff has neither articulated nor supported sufficiently any claim for interference that she purports to have brought against Defendant Chiampi.  Accordingly, following review of the evidence

---

[15]  In marked contrast, Defendants have submitted evidence that Ms. O'Donnell's requests for FMLA were never denied. (Doc. 63, Attach. 7, Kowalsky Decl. ¶ 17.)

submitted by the parties, we find there to be no basis to permit Plaintiff's

interference claim to survive summary judgment.

> **4.      Defendant Chiampi and the other Individual Defendants are Entitled to Summary Judgment on Plaintiff's Claims that They Retaliated Against Her Because She Engaged in Protected Activity.**

Plaintiff claims that Defendant Chiampi retaliated against her after she

engaged in protected activity – namely, pursuing an accommodation for a

disability or medical need – in violation of the First Amendment.[16]  Plaintiff claims

that she suffered retaliation for engaging in protected activity when she was

denied promotions and other job benefits.

Defendant Chiampi acknowledges that seeking an accommodation under the

ADA or other statutes constitutes protected activity, but maintains that he took no

adverse action against Ms. O'Donnell with respect to her request for an

accommodation, or for any other reason.  (Doc. 63, Attach. 5, Chiampi Decl., ¶¶ 3,

9.)  Furthermore, Defendant Chiampi agrees that denying an employee promotions

---

[16]  It is not entirely clear exactly which statutes Plaintiff claims Defendant Chiampi violated through retaliatory conduct.  Regardless, the law governing claims of retaliation for engaging in protected activity under the First Amendment or for pursuing rights guaranteed by a statute are, for all relevant purposes, identical.  Accordingly, we consider in this section any claim of retaliation brought against Defendant Chiampi.

or other employment benefits can, in some situations, be considered an adverse action that would support a retaliation claim.  However, Defendant Chiampi insists he had no involvement in any action that Ms. O'Donnell now claims to have been retaliatory.  (Id., ¶¶ 10-13.)  Defendants have also submitted substantial evidence to demonstrate that neither Defendant Chiampi, nor any other Defendant, had any role to play in the decision not to hire or promote Plaintiff to other positions within the DOC to which she had applied.  In response, Plaintiff has offered nothing of substance to discredit Defendants' evidence, or to demonstrate that a disputed issue of material fact precludes summary judgment on her retaliation claims.

The Third Circuit Court of Appeals has instructed that courts should follow a three-step burden-shifting process when examining a public employee's § 1983 claim of retaliation for engaging in activity protected under the First Amendment. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  "First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action.'  Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct."  Id. (citations omitted).  When there is more than one

defendant, the employee must show that each defendant individually participated or acquiesced in each of the alleged constitutional violations. <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005); <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1294 (3d Cir. 1997).  It is well-settled that with respect to claims under 42 U.S.C. § 1983, such as First Amendment retaliation, liability cannot be imposed on the basis of respondeat superior or mere supervisory liability, but instead must be predicated on personal involvement of the defendant.  <u>See, e.g.</u>, <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).

Guided by these well-settled legal standards, our analysis in this case is both straightforward and abbreviated.  The parties agree that Plaintiff engaged in protected activity, and the parties agree that the failure to receive promotions or other workplace benefits can, in some circumstances, constitute adverse action that would support a retaliation claim.  However, Defendants insist that neither Defendant Chiampi nor any other named Defendant had any role of any kind in any decision to deny Plaintiff employment benefits or promotions, and they have submitted sworn declarations to support their positions that none of them took any adverse action with respect to Ms. O'Donnell.  In response, Plaintiff has offered nothing but argument, and she fails entirely to address squarely Defendants factual arguments and evidence showing that they simply cannot be held liable for

allegedly retaliatory conduct in which they played no role of any kind.  Thus,

although we join with Plaintiff and Defendants by agreeing that Plaintiff engaged

in protected activity, and that the adverse actions she complains about could,

theoretically, support a claim for retaliation, we find that there is no triable issue

with respect to Ms. O'Donnell's retaliation claims because there is no evidence at

all to support her claims that the Defendants actually named in this lawsuit had

anything to do with the conduct she claims was retaliatory.[17]  We will, therefore,

grant the Individual Defendants' motion for summary judgment with respect to

Plaintiff's retaliation claims.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motions will be granted in part

and denied in part.  The Department's motion will be denied with respect only to

Plaintiff's claim that the Department is liable under the Rehabilitation Act for

discrimination by failing to reasonably accommodate her medical needs.  In all

other respects, the Department's motion for summary judgment will be granted.

---

[17]  We refer also to our discussion in Section IV.A.4, <u>supra</u>, in which we addressed Plaintiff's claims of retaliation against the DOC.  The legal discussion and factual analysis set forth in that section applies with equal force to Plaintiff's claims against the Individual Defendants, and compels that summary judgment be entered in favor of the Individual Defendants with respect to Plaintiff's retaliation claims.

The Individual Defendants' motion will be denied with respect only to Plaintiff's claim that the Individual Defendants, in their individual capacities, violated the PHRA by aiding and abetting conduct that is proscribed by the statute. In all other respects, the Individual Defendants' motion for summary judgment will be granted.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MONICA O'DONNELL,** | : | |
| | : | **Civil Action No. 3:09-CV-1173** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this 16th day of May, 2011, upon consideration of Defendants'

motions for summary judgment (Docs. 58, 65), and for the reasons set forth in the

within memorandum, IT IS HEREBY ORDERED THAT:

1.    The Department of Corrections' motion for summary judgment (Doc. 65) is DENIED with respect to Plaintiff's claims that the Department violated § 504 of the Rehabilitation Act by failing to accommodate her medical needs.  The motion is GRANTED with respect to all other claims brought against the Department.

2.    The Individual Defendants' motion for summary judgment (Doc. 58) is DENIED with respect to Plaintiff's claims against the Individual Defendants in their individual capacities for alleged violations of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951 et seq.  The motion is GRANTED with respect to all other claims brought against the Individual Defendants.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge