**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MONICA O'DONNELL,                               :
                                                :  **Civil Action No. 3:09-CV-1173**
    **Plaintiff**                                :
                                                :
**v.**                                          :  **(Magistrate Judge Carlson)**
                                                :
PENNSYLVANIA DEPARTMENT                          :
OF CORRECTIONS, et al.,                          :
                                                :
    **Defendants**                             :

## MEMORANDUM  OPINION

### I.    Statement of Facts and of The Case

This case presents a sad coda to a government service career spanning more than three decades. Currently pending before the Court is Plaintiff Monica O'Donnell's third motion for sanctions against Defendants and their counsel. (Doc. 103.)  This motion arises out of an extraordinary and troubling circumstance, the unilateral decision of government defense counsel to elect to take a European vacation at a time when counsel was scheduled for a pre-trial conference and trial before this Court, coupled with the wholesale failure of counsel to disclose this scheduling conflict to the Court, opposing counsel and her own supervisors for a span of almost five months.

The background surrounding these unfortunate events can be simply summarized. In January 2011, Gwedolyn Mosley, an attorney with more than 30 years

litigation practice experience in state government, was assigned as defense counsel in this case. On January 20, 2011, this Court entered a scheduling order in this case. That order provided in clear and precise terms for the following litigation schedule in this matter:

| | |
|---|---|
| Close of Fact Discovery: | **February 14, 2011** |
| Dispositive Motions and Supporting Briefs Due: | **February 14, 2011** |
| Local Rule 16.3 - Attorney Conference and Exchange of Proposed Jury Instructions: On or before: | **April 11, 2011** |
| Motions In Limine Due: | **April 18, 2011** |
| Pretrial Memoranda Due: | **April 25, 2011** |
| Proposed Jury Charge, Proposed Voir Dire Questions and Objections to Proposed Jury Charge: | **May 2, 2011** |
| Pretrial and Settlement Conference: | **May 9, 2011 at 1:30 P.M.** |
| Trial Brief Due: | **May 16, 2011** |
| Trial: | **May 23, 2011 at 9:30 a.m.** |

(Doc. 46.)

At the time that this order was entered, there were manifold reasons for defense

2

counsel to be particularly attentive to her professional obligations of candor, and timeliness, in this case. At the outset, this litigation had already been plagued by months of delay which occurred when defense counsel led a mediator and plaintiff's counsel to believe that this case had settled, and then permitted the court to dismiss the case based upon this reported settlement, even though defense counsel became aware that her clients had not agreed to settle this matter.

Moreover, at the time of the entry of this January 20, 2011, scheduling order, defense counsel's alleged failure to fulfill her professional responsibilities were already the subject of two separate pending motions for sanctions, motions citing counsel for failing to provide discovery and the failure to participate in good-faith in settlement and mediation efforts. (Docs. 33 and 39. ) These two pending sanctions motions were a further circumstance that called out for particular care in this case. Indeed, because the Court had been disturbed by the prior conduct of counsel this case, the Court took the additional step in this scheduling order of advising and admonishing the parties that:

> The Court notes that the course of this litigation has inspired some confusion and acrimony, as reflected by the two motions for sanctions which are now pending. In an effort to eliminate or reduce these problems, IT IS HEREBY ORDERED THAT:
>
> 1. The Court will convene a telephonic case management conference with the parties **Wednesday, February 9, 2011, at 1:30 p.m.** The

conference will be held telephonically, with the Plaintiff responsible for placing the call to the Court once all parties are on the line. The purpose of this conference is to assure that all discovery is being completed in a timely fashion and that there is no further confusion of the type which has inspired sanctions litigation in this case. The Defendants shall be represented by trial counsel, **and** the Deputy Chief Susan Forney.

(Doc. 46.)

Thus, on January 20, 2011, defense counsel's professional responsibilities and her personal circumstances in this case provided her with every incentive to adopt a path of conscientious candor with respect to both the Court, and opposing counsel. Yet presented with a situation that called out for candor, counsel inexplicably chose a course of continuing concealment and non-disclosure relating to a matter of vital significance in this litigation; specifically, whether counsel intended to appear for the pre-trial conference on May 9, 2011 and be prepared for trial on May 23, 2001, as ordered by the court.

In fact, it is now sadly apparent to the court that defense counsel could not have intended to appear for court, as ordered, because counsel concedes that, on January 20, 2011, when this court entered its scheduling order, she had already scheduled a European vacation, "beginning on May 7 . . . until May 20, 2011." (Doc. 107.) Indeed, according to counsel she would not have returned to the United States until May 22, 2011, the day before this trial was scheduled to commence. Thus, it is

entirely undisputed that, at the very time this trial was scheduled by the court, defense counsel planned to be outside of the United States during a critical juncture in this scheduled litigation.[1]

While defense counsel now admits that she planned to leave the United States during the time when this matter was scheduled for pre-trial conference, and would not have returned to this country until the very eve of trial, some aspects of this longstanding overseas travel planned by defense counsel still remain shrouded in mystery. In particular, we could not ascertain when defense counsel, in fact, scheduled this trip which conflicted with her litigation responsibilities. There is a singular source for this mystery and confusion – defense counsel – who reported to

---

[1]With respect to this scheduling conflict defense counsel made several representations at a June 10 sanctions hearing held by this court which we have carefully considered, but cannot fully credit. First, defense counsel suggested at various times in her testimony that she did not perceive a scheduling conflict between her undisclosed vacation plans and this litigation schedule. This assertion is not fully credible since the conflict is self evident–defense counsel planned to be in Spain at the very time that the pre-trial conference in this case was scheduled in Harrisburg. Second, counsel stated that she would have been prepared in any event to try the case on May 23, 2011 upon her return from her undisclosed vacation. This assertion is difficult to reconcile with the facts. This case presented grave issues of individual and institutional liability for those represented by defense counsel. Recognizing the significance of adequate representation to these parties, we cannot fully credit counsel's assertion that she felt that she would be prepared to meet the needs of these clients, when she skipped the pre-trial conference, and then took no steps in the weeks preceding the trial to prepare for trial. We believe that counsel takes her responsibilities to her clients too seriously to suggest that she would appear for trial without adequate preparation.

this court that she made her travel plans "during the first of January," (Doc. 107), while claiming in pleadings filed before another judge of this court in a separate lawsuit that she had actually scheduled her European vacation as early as November, 2010. See Green v. Sneath, No. 09-CV-154 (Doc. 74). Despite questioning from the Court, defense counsel has never provided an adequate explanation for why she provided two different, and contradictory, accounts of this travel to two judges of this court.

Over the following four months after this trial schedule was set defense counsel engaged in a pattern of non-disclosure regarding this scheduling conflict, ignoring multiple opportunities to place the Court and opposing counsel on notice of this scheduling conflict. Thus, on January 28, 2011, defense counsel filed a motion to amend the pre-trial schedule which inexplicably failed to mention the fact that counsel did not plan to be in the United States during the crucial days preceding the scheduled trial.(Doc. 50.) We granted this motion, reflecting our willingness to work with counsel on scheduling issues that are disclosed to the court. (Doc. 52.) Despite this clear indication of the Court's willingness to make timely revisions in this scheduling order, based upon candid disclosures by counsel, defense counsel took no action to notify us of her scheduling conflict.

Four days later, on February 4, 2011, the Court entered an order granting, in

part, a sanctions motion filed against defense counsel.(Doc. 53.) That opinion sanctioned counsel for her lack of candor during settlement discussions, citing her for her persistent failure to disclose material facts to the court and opposing counsel, and concluded with an admonishment which spoke directly to the need for candor by counsel, stating:

> In closing, the Court will once again take the opportunity to urge the parties to commit themselves to communicating fully, candidly, and timely with one another, and with the Court, as this litigation moves forward. Clearer and more fulsome communication between counsel in this case would have helped considerably to clear up the confusion that seems to have persisted in this matter up until this point. We expect that the parties' mutual commitment to greater communication will go a long way towards ensuring an efficient and fair resolution of this action, whether through a trial or otherwise.

(Id., p. 26.) Despite this explicit statement regarding the Court's expectations of candor by counsel, defense counsel persisted in her failure to disclose the fact that she intended to travel to Europe at a time when she was scheduled for trial before this court.

On February 18, 2011, the Court held a telephone conference with the parties for the purpose of ensuring that the parties adhered to this pre-trial schedule. This was the telephonic case management conference previously set by the Court, which the Court had directed defense counsel and her supervisor to both attend. (Doc. 55.)

At this conference we, once again, underscored the need for candor by counsel.[2]

Despite these admonitions and warnings, March and April passed without any notification from defense counsel of her own planned absence from the pre-trial conference, or her intention to effectively abandon this litigation for the weeks immediately preceding the May 23, 2011 scheduled trial of this case. Thus, although defense counsel filed a series of pleadings over this two-month span, (Docs. 65, 66, 67, 68, 77 and 81), she never informed the Court or opposing counsel of her planned absence.

Moreover as the May trial date approached, defense counsel began to systematically default on her litigation obligations. Thus, when the plaintiff filed a timely motion *in limine*, defense counsel neglected to submit any response, compelling the court to grant the motion as unopposed. Defense counsel also failed to file a pre-trial memorandum by April 25, 2011, as directed by the Court, and neglected to file proposed jury instructions by May 2, 2011, as ordered by the Court.

Instead of complying with these trial deadlines, or notifying the Court of her

---

[2]Defense counsel's supervisor has now filed a declaration that confirms that she was present when defense counsel participated in this conference call but states that she was unable to hear the remarks of the participants in the call because defense counsel did not place the call on a speaker phone. (Doc. 118.) This declaration also details other difficulties experienced by defense counsel, and reveals that defense counsel did not disclose her scheduling conflicts relating to this May 2011 trial schedule to her own supervisor. (Id.)

impending scheduling conflict, defense counsel chose to follow an elliptical path, which sought to delay the trial without disclosing the fact that counsel planned to depart the United States for vacation and did not intend to address critical pre-trial matters. This course of conduct commenced on May 2, 2011 at 6:47 p.m., when the Court received a motion for stay from the defense counsel, (Doc. 86), which sought to stay filing deadlines previously set by the court on February 1, 2011, many of which had already lapsed without action by defense counsel.

On May 3, 2011, we denied this request, noting that defense counsel's request was untimely, and was opposed by the plaintiff, who had complied with this litigation schedule. (Doc. 87.) We then instructed the parties as follows: "Therefore, the motion is DENIED without prejudice to the parties further discussing a timetable for litigation of claims at the pre-trial conference scheduled on **May 9, 2011 at 1:30 p.m.** In the meanwhile the defendants shall forthwith comply with the schedule set by the court on February 1, 2011." (Id.)

This Court's May 3 order placed counsel on notice of her responsibilities in unmistakably clear terms. That order, which denied a motion to continue the trial schedule, and underscored the Court's expectation that it would be conducting a pre-trial conference with all counsel in this case on May 9, 2011, plainly put defense counsel on notice that her personal travel plans–which had been set for months and

entailed a departure from the United States on May 7 with a return on May 22–now irreconcilably conflicted with her professional responsibilities in this case. In light of this order, May 3, 2011 constituted defense counsel's last, best opportunity for candor with the Court.

Counsel forfeited this opportunity for honesty. Thus, counsel took no steps to notify the Court of her impending scheduling conflict on May 4 or 5, 2011. Instead, defense counsel waited until 3:39 p.m., on May 6, 2011–mere hours before her scheduled departure from the United States–to file a motion captioned "Unopposed Motion for Continuance." (Doc. 95.) In this motion, defense counsel misstated the position of the plaintiff with respect to this continuance request. Specifically, notwithstanding counsel's characterization of the motion as "unopposed", the motion was not, in fact, unopposed. Quite the contrary, plaintiff's counsel opposed this request, as he had opposed the identical request made by defense counsel on May 2, 2011. Furthermore, beyond this misleading description in the caption of this pleading, the motion persisted in repeating claims that had been rejected by the Court as grounds for continuance, and concealed from the Court a material fact, the fact that defense counsel was presently en route to Spain and had no intention of

attending the pre-trial conference.[3]

Because of troubling inconsistencies in this motion, we denied this request on May 6, 2011, and reaffirmed our expectation that all parties should adhere to our previously set pre-trial and trial schedule. (Doc. 95.) On May 9, 2011, we then learned, for the first time, that defense counsel had departed the United States

---

[3]At the June 10 sanctions hearing held by the Court on this matter, defense counsel attempted to justify this lack of candor by claiming that she had asked an intermediary to find out if the Court would grant a consented-to motion for continuance, and believed that such a motion would be granted.  This explanation, proffered by counsel, is wholly unpersuasive for the following reasons: First, it ignores the fact that plaintiff's counsel did not consent to this continuance motion and had in fact opposed an identical request four days earlier, on May 2, 2011. In light of this past history, it was entirely unrealistic for defense counsel to expect concurrence on this belated request. Second, this explanation does not fully explain or justify the decision to caption this tardy motion as "unopposed" when, in fact, plaintiff's counsel did not concur in the motion. Third, this belated *post hoc* rationale does not explain the inexplicable decision of defense counsel to continue to conceal the conflict caused by counsel's longstanding travel plans from the court, opposing counsel and her own supervisors. Fourth, defense counsel's current explanation rests entirely on multiple hearsay assertions regarding what defense counsel thought another person said about information allegedly conveyed from court staff. As rank hearsay, this claim will not be considered by the Court. Finally, we note that defense counsel's claim that she believed she had been given permission through an intermediary to continue the case and depart the country could easily have been confirmed through the simple expedient of calling as a witness the person who allegedly made these inquiries on behalf of defense counsel and then conveyed this information to defense counsel. This person is an employee of the state, and it was uniquely within the state's control to call this witness. The state chose not to call this witness despite the Court's inquiries, permitting the Court to justifiably infer that the missing witness' testimony would not have advanced defense counsel's claims.

without any prior notice, explanation or excuse, and would not return to this country until the date set for trial in this case. Defense counsel's unilateral action forced the continuance of this trial, delayed the resolution of this case for all parties and greatly inconvenienced the litigants and witnesses.

Presented with defense counsel's unannounced abandonment of this case, plaintiff's counsel filed a third motion for sanctions in this case. (Doc. 103.) The court held a hearing on this motion on June 10, at which time defense counsel was given an opportunity to explain and justify her conduct. (Doc. 116.) The parties were then permitted to fully brief this motion, which is now ripe for resolution.

For the reasons set forth below, the motion will be granted, in part, and defense counsel will be ordered to pay attorneys fees for the costs associated with the plaintiff's April and May trial preparation in this case, trial preparation that would not have been necessary except for defense counsel's lack of candor.

## II.   <u>Discussion</u>

The standards governing motions for sanctions are familiar ones, in part due to the regrettable fact that we have been compelled to re-visit these standards on several occasions in the course of this particular litigation. With respect to such motions, our exercise of discretion in this instance is guided by settled case law describing the responsibilities of the court when considering sanctions against

parties. At the outset, it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it. See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007). Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson ). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43 (1991).

Sanctions decisions rest in the sound discretion of the court and, if a district court awards sanctions pursuant to its inherent authority, such an award may only be reviewed for abuse of discretion, which will be found only where "the court's

decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)).

In addition to the court's inherent authority, Rule 16(f) of the Federal Rules of Civil Procedure also provides that upon a motion, or on its own motion, a court may issue sanctions if a party or its attorney:

(A)   fails to appear at a scheduling or other pretrial conference;

(B)   is substantially unprepared to participate – or does not participate in good faith – in the conference; or

(C)   fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f); see also Tracinda Corp., 502 F.3d at 242 (observing that whereas sanctions imposed pursuant to court's inherent authority generally require finding of bad faith, Rule 16(f) contains no such requirement). Indeed,

> Relying on this Rule, [courts] have imposed sanctions based upon an attorney's failure to attend a . . . conference or abide by the order scheduling the conference. See Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008) (Schwab, J.) (denying motion for reconsideration of sanctions imposed for failure to participate in settlement conference in good faith); Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722, at *3 (E.D.Pa. Sept.27, 2007) (Perkin, M.J.) (sanctions imposed for failing to participate in settlement conference in good faith); Miller v. Unum Life Ins. Co. of America, 05-177, 2006 WL 30000962, at *1 (E.D.Pa. Oct.

19, 2006) (Hart, M.J.) (sanctions imposed for failure to attend court ordered settlement conference).

Stewart v. Moll, No. 07-1085, 2008 WL 2954737, *3 (E.D.Pa. July 31, 2008). Thus, Rule 16 authorizes imposition of sanctions where parties fail to comply with scheduling orders setting conferences. Grant v. Omni Health Care Systems of NJ, Inc., No. 08-306, 2009 WL 3151322 (D.N.J. Sept. 24, 2009); Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008); Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722 (E.D.Pa. Sept.27, 2007).

Yet while this court doubtless has the discretion to order imposition of sanctions in appropriate cases, the exercise of this discretion is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d. Cir. 1999).This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways.  Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc. 501  U.S.

at 44-45 (citation omitted). Therefore, in exercising this authority we are cautioned

that:

> [A] district court must ensure that there is an adequate factual predicate
> for flexing its substantial muscle under its inherent powers, and must
> also ensure that the sanction is tailored to address the harm identified.
> In exercising its discretion under its inherent powers, the court should
> be guided by the same considerations that guide it in the imposition of
> sanctions under the Federal Rules. First, the court must consider the
> conduct at issue and explain why the conduct warrants sanction.

Republic of Philippines v. Westinghouse Elec. Corp. 43 F.3d at 74.

Moreover:

> [H]aving evaluated the conduct at issue, the district court must
> specifically consider the range of permissible sanctions and explain
> why less severe alternatives to the sanction imposed are inadequate or
> inappropriate. Although the court need not "exhaust all other
> sanctioning mechanisms prior to resorting to its inherent power"
> (Landon v. Hunt, 938 F.2d at 450, 454 (3d Cir.1991)), the court must
> explain why it has chosen any particular sanction from the range of
> alternatives it has identified. See Poulis, 747 F.2d at 868 (sanctions
> under Fed.R.Civ.P. 16 and 37).

Id.

In addition, in a case such as this, where the proposed sanctions sought by a

plaintiff include entry of a default judgment, or preclusion of claims, other legal

considerations guide the exercise of the court's discretion.  Decisions regarding

dismissal of actions, entry of default judgments, or preclusion of claims as sanctions

16

rest in the sound discretion of the Court, and will not be disturbed absent an abuse

of that discretion. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir.

2002)(citations omitted).   That discretion, however, while broad is governed by

certain factors, commonly referred to as <u>Poulis</u> factors. As the United States Court

of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in
> imposing sanctions which affect the substantive outcome of litigation],
> we evaluate its balancing of the following factors: (1) the extent of the
> party's personal responsibility; (2) the prejudice to the adversary caused
> by the failure to meet scheduling orders and respond to discovery; (3)
> a history of dilatoriness; (4) whether the conduct of the party or the
> attorney was willful or in bad faith; (5) the effectiveness of sanctions
> other than dismissal, which entails an analysis of alternative sanctions;
> and (6) the meritoriousness of the claim or defense. <u>Poulis v. State
> Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.With these basic principles in mind we turn to

consideration of the plaintiff's third motion for sanctions.

### 2.   Entry of a Default or Issue Preclusion Are Not Appropriate Sanctions Here

At the outset, while we find that counsel repeatedly erred by filing inaccurate

pleadings, by failing to timely correct those inaccuracies, and by concealing material

facts from the Court and opposing counsel, we conclude that a sanction in the form

of a default judgment or some form of issue preclusion is not warranted here. As we

have observed, decisions regarding whether to impose severe sanctions that resolve

the merits of a lawsuit are governed by certain factors, commonly referred to as

Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in
> dismissing a case as a sanction], we evaluate its balancing of the
> following factors: (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure to meet
> scheduling orders and respond to discovery; (3) a history of
> dilatoriness; (4) whether the conduct of the party or the attorney was
> willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense. Poulis v. State Farm Fire and
> Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In this case, an assessment of these Poulis factors presents a close case

regarding whether we should impose of sanctions which would affect the outcome

of this litigation. Indeed, many of the Poulis factors would seem to call for severe

sanctions here.

At the outset, one of the principal Poulis factors–the party's history of

dilatoriness–clearly weighs in favor of a significant sanction. This episode represents

neither an isolated lapse nor a momentary error in judgment. The non-disclosures in

this matter span months, involve numerous episodes that fall well below the level of

candor required of counsel, and entail a lack of candor in the face of repeated

reminders of the importance of honesty. Moreover, this misconduct occurred *after* counsel had been specifically admonished and disciplined for a prior lack of candor in this litigation, an extremely troubling circumstance.

In addition, another <u>Poulis</u> factor, whether the conduct of the party or the attorney was willful or in bad faith, weighs against the defendants in this case. In this regard, "[g]enerally, '[w]illfulness involves intentional or self-serving behavior.' . . . If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.' " <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262 (3d Cir. 2008). Thus, it has been held that willfulness involves "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). Here, we are compelled to conclude that defense counsel's actions were willful, in that these actions were strategic, self-serving, and intentional, and were designed to place greater priority on counsel's personal vacation plans than on her professional responsibilities to her clients and the court. Counsel's conduct involved multiple failures to communicate one of the most material and basic facts in any litigation–whether a party plans to attend court. These non-disclosures were repeated, and repeatedly arose in a context where the importance of candor was self-evident. Moreover, these non-disclosures took place against a backdrop of prior sanction litigation, where counsel had failed to be

completely candid with the court.  The depth of this non-disclosure is reflected in the fact that not only the Court and opposing counsel were misled by counsel's actions, defense counsel's supervisors were also not informed of the manner in which counsel had left this important litigation before departing on a European vacation. (Doc. 118.)[4]

Further, another <u>Poulis</u> factor–the prejudice caused to the adversary–clearly has relevance here and weighs against the defendants. This is a case where defense counsel's conduct has repeatedly harmed and prejudiced the plaintiff. In 2010, Monica O'Donnell was prejudiced by defense counsel when her case was delayed for months due to defense counsel's inexplicable delay in reporting that a case which she had led the mediator and counsel to believe was settled had not, in fact, settled. The May 2011 trial date set by the court was intended to address the manifest prejudice visited upon O'Donnell by this prior delay, and provide her with a prompt trial of these claims. By heedlessly ignoring these deadlines, and concealing her plans to depart the United States from the Court and plaintiff's counsel, defense counsel compelled O'Donnell to endure further delay, and suffer further harm.

---

[4]Further we are compelled to observe that defense counsel had been separately sanctioned by another judge of this court for similar misconduct occurring in 2010, a further factor which rebuts a claim of mere inadvertence by counsel and suggests a pattern of non-compliance.  <u>See Craig v. Kelchner</u>, No. 07-1157, 2010 WL 528331 (M.D. Pa. Feb. 11, 2010)

While these Poulis factors all call for significant sanctions, examination of the remaining Poulis considerations prevents us from imposing a sanction that determines the outcome of this litigation. First, taking into account the initial Poulis factor– the extent of the party's personal responsibility–there is no indication that the individual and institutional defendants were personally responsible for this misconduct. Indeed, counsel's misconduct in a very real way harmed her clients' interests, since it delayed their opportunities to resolve this case, and exposed them to these sanctions proceedings. In this setting, where the defendants personally bear no culpability for the conduct at issue, imposing a sanction that adversely affects defendants' individual and institutional rights and interests would be inappropriate.

Examining the fifth Poulis factor–the effectiveness of sanctions other than dismissal–we find that there are other, lesser sanctions that are available here. Therefore, this consideration also suggests that entry of a default judgment or some form of issue preclusion would not be the proper course to follow in this case.

Finally, as to the sixth Poulis factor–the meritoriousness of the claim or defense–we have found that many of the plaintiff's claims were subject to dismissal as a matter of law. With respect to the remaining claims, we recognize that there are substantial arguments that can be made by the defense concerning the merits of these claims. Indeed, we have set this matter for trial, and we believe that the case should

therefore be permitted to proceed to a resolution of these claims on their merits, rather than through sanctions litigation.

Thus, notwithstanding the significant, intentional and repeated nature of this misconduct we find that a dispassionate assessment of the Poulis factors leads us to conclude that entry of a default judgment or preclusion of defenses would not be appropriate here.

## 2.    Monetary Sanctions Are Appropriate Here

Instead, in this case we conclude that the appropriate sanction would be an award of attorneys fees for the plaintiff's counsel for his time spent needlessly preparing for trial in May, 2011, as well as his time committed to this sanctions motion litigation.

In reaching this conclusion, we recognize that it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it.  See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007).  Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that: "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. Anderson v.

22

Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)." Chambers v. NASCO, Inc. 501 U.S. 32, 43 (1991). When a district court awards sanctions pursuant to its inherent authority, that sanction decision will only be reviewed for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)).

In addition to the court's inherent authority, Rule 16(f) of the Federal Rules of Civil Procedure also provides that upon a motion, or on its own, a court may issue sanctions if a party or its attorney fails to appear at a scheduling or other pretrial conference; is substantially unprepared to participate – or does not participate in good faith – in the conference; or fails to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f); see also Tracinda Corp., 502 F.3d at 242 Indeed, it is well-settled that Rule 16 "is the *usual vehicle* for imposing coercive or punitive sanctions in these circumstances." Taberer v. Armstrrong World Indus., Inc., 954 F.2d 888, 892, n.3 (3d Cir. 1992)(emphasis added).Thus, Rule 16 expressly authorizes imposition of sanctions in a situation such as this where counsel failed to abide by court orders. See e.g., Lease v,. Fishel, 712 F.Supp.2d 359 (M.D. Pa. 2010); Grant

v. Omni Health Care Systems of NJ, Inc., No. 08-306, 2009 WL 3151322 (D.N.J.

Sept. 24, 2009); Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL

1774115 (W.D.Pa. Apr.17, 2008).

Yet while Rule 16 gives the court the discretion to sanction failures by

Defendants  to comply with scheduling orders, this discretion is guided by certain

basic principles. Foremost among these principles is the tenet that sanctions should

always be narrowly tailored to meet the misconduct, and should entail no greater

punishment than is reasonably necessary to address the specific wrongdoing that

confronts the court. See, Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98

(3d. Cir. 1999).Therefore, in exercising this authority we are cautioned that: " In

exercising its discretion under its inherent powers, the court should be guided by the

same considerations that guide it in the imposition of sanctions under the Federal

Rules. First, the court must consider the conduct at issue and explain why the

conduct warrants sanction." Republic of Philippines v. Westinghouse Elec. Corp. 43

F.3d at 74. Moreover, "having evaluated the conduct at issue, the district court must

specifically consider the range of permissible sanctions and explain why less severe

alternatives to the sanction imposed are inadequate or inappropriate." Id.

Applying these principles we find that a narrowly tailored sanction consisting

of an attorneys fees award to plaintiff's counsel for the time spent needlessly

preparing for trial in May, 2011, as well as his time committed to this sanctions motion litigation is appropriate here. Such a sanction is legally warranted, and factually justified here, where the actions of defense counsel ignored court scheduling orders, involved material non-disclosures, delayed the trial of this case on its merits, and occurred after sanctions had previously been imposed on counsel for prior non-disclosures in the course of this litigation. In fact, it is entirely fitting that the sanction in this case consist of reimbursement of counsel fees for the time lost by plaintiff's counsel preparing for a May trial that defense counsel knew would never occur. Defense counsel was uniquely capable of avoiding this cost and expense entirely through the simple step of engaging in candor with the Court and opposing counsel. Since this needless cost is directly related to defense counsel's calculated non-disclosures, it constitutes the proper measure of sanctions for those non-disclosures.

In reaching this conclusion we have specifically considered, but rejected, the idea that we could properly exercise our discretion by electing to simply impose a nominal monetary sanction on a party whose conduct may warrant some penalty. See Skinner v. E.I. Du Pont De Nemours and Co., No. 07-384, 2009 WL 783329 (D.Del. March 25, 2009)(imposing nominal sanctions). The sad truth is that we have already employed a nominal sanction in this case, to no avail. Thus, we are left with a

situation where counsel's conduct compels some further sanction in the nature of attorneys' fees.

### 3.   Principles Governing Assessment of Fees as Sanctions

Having determined that attorneys fees are an appropriate sanction here, we write briefly to address how the amount of these fees should be determined. In setting the amount of this sanction: "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered . . . ." Knight v. Drye, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.2d 143, 150 (3d Cir. 1990). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

Determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation).The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

In addition to the traditional lodestar analysis, we note that in the context of sanctions litigation – unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party – the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted). Further, one particularly important consideration in determining an appropriate fee charged as sanctions is the violating party's ability to pay. Id. at 195. The Third Circuit explained:

> A particularly relevant equitable factor is the sanctioned party's ability to pay. Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive -- or that might even drive the sanctioned party out of practice.

Id. at 195-96 (footnotes omitted).


### III.   Conclusion

While we find that some sanction, in the form of attorney's fees, is appropriate here given the serious and repeated nature of the non-disclosures by defense counsel, we conclude this decision as we began it by expressing our regret that this conduct becomes the coda for counsel's three decades of government service. However, our regret at this course of events cannot deter us from our responsibilities when confronted by persistent misconduct in the face of explicit admonitions that candor is required of all counsel.

Accordingly, for the foregoing reasons, IT IS ORDERED as follows:

The Plaintiff's third motion for sanctions, (Doc. 103) is GRANTED, in part, and DENIED, in part, as follows:

1.     To the extent that the plaintiff sought default judgment, issue preclusion or some other case determinative sanction the motion is DENIED.

2.     To the extent that the plaintiff sought attorney's fees as sanctions, the

motion is GRANTED, and the plaintiff shall make a submission addressing the considerations relevant to the awarding of attorney's fees set forth in this opinion, on or before August 15, 2011[5].

3.    The defense counsel may then file a response relating to the issue of calculation of fees on or before August 29, 2011.

So ordered this 26th day of July, 2011.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

---

[5]The court notes that the parties are also engaged in merits litigation in this case in August 2011. Therefore, at the request of the parties, the court will defer these submissions until after the trial of this case, if the parties so choose.