IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONICA O'DONNELL, : | |
| : | Civil Action No. 3:09-CV-1173 |
| **Plaintiff,** : | |
| : | |
| v. : | (Magistrate Judge Carlson) |
| : | |
| PENNSYLVANIA DEPARTMENT : | |
| OF CORRECTIONS, et al., : | |
| : | |
| **Defendants.** : | |

**MEMORANDUM OPINION**

**I.     Statement of Facts and of the Case**

In this case we are now called upon to write the final chapter in the sad coda to a government service career spanning more than three decades. Currently pending before the Court is plaintiff Monica O'Donnell's third motion for sanctions against defendants and their counsel. (Doc. 103) This motion arises out of an extraordinary and troubling circumstance, the unilateral decision of government defense counsel to elect to take a European vacation in May 2011, at a time when counsel was scheduled for a pre-trial conference and trial before this Court, coupled with the wholesale failure of counsel to disclose this scheduling conflict to the Court, opposing counsel and her own supervisors for a span of almost five months.

We have already determined that this fundamental breach of counsel's professional obligations, which occurred after counsel had previously been cited in

this case for other professional misconduct, see, O'Donnell v. Department of Corrections, No. 09-1173, 2011 WL 398399 (M.D. Pa. Feb. 4, 2011), warrants some sanction, in the form of an attorney's fee award. See O'Donnell v. Department of Corrections, No. 09-1173, 2011 WL 3163230 (M.D. Pa. July 26, 2011). Because the facts of this matter have been fully discussed, and are fully familiar to the parties, we will not re-state them at length in this opinion. We are compelled, however, to briefly address one belated factual assertion made by defense counsel in the latest filing in this case.

On September 19, 2011, defense counsel filed a brief in this matter which belatedly claimed that these sanctions proceedings were improper because defense counsel had been denied due process, by being denied notice and an opportunity to be heard. (Doc. 183) This is an extraordinary assertion. In fact, there is, perhaps, some unintended irony to this belated claim, since defense counsel provided the Court and the parties in this litigation absolutely no notice of her intention to forego the pre-trial conference and trial preparation in this case in May of 2011, but now complains that she received inadequate notice of these sanctions proceedings, proceedings which stemmed from her wholesale failure to provide any notice of material facts to the Court and opposing counsel.

In any event, this belated claim has no merit. While "the Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a litigant or attorney," Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995), it is clear that the requirements of due process are fully met when, "the party against whom sanctions are being considered [receives notice] of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." In re Tu Tu Wells Contamination Litigation, 120 F.3d 368, 379 (3d Cir. 1995).[1]

These due process requirements were fully met in this case. At the outset, counsel had ample notice of the her rights and responsibilities in connection with this sanctions matter, because this was, sadly, the second sanctions proceedings which the Court had been compelled to conduct in this case. See O'Donnell v. Department of Corrections, No. 09-1173, 2011 WL 398399 (M.D. Pa. Feb. 4, 2011). In any event, this Court's orders of May 10 and 12, 2011, plainly gave counsel notice of the basis for this sanctions hearing and an opportunity to be heard. (Docs. 98 and 101) Indeed, those orders set both briefing and hearing schedules for any sanctions motion, thereby ensuring both notice and a full opportunity to be heard for defense counsel. (Id.)

---

[1] We note that defense counsel aptly cites to these due process standards in her brief, but provides erroneous and incomplete citations to both Martin v. Brown and In re Tu Tu in this brief. (Doc. 184, p. 5)

The plaintiff's sanctions motion then provided defense counsel with further notice of these proceedings, and specifically placed counsel on notice that the plaintiff was seeking sanctions both in the form of relief which would effect the outcome of this litigation, as well as financial penalties of up to $2,500. (Docs. 103 and 104)

In fact, the initial response of defense counsel to this sanctions motion utterly belies her current claim that she was denied notice of the allegations against her. Prior to the June 10, 2011, hearing conducted in this case, defense counsel filed several detailed responses to this motion, responses which amply illustrated that counsel was entirely aware of the legal and factual grounds for these proceedings. (Docs. 107, 108, and 111)[2]

---

[2]While these responses thoroughly rebut counsel's claim that she lacked notice and an opportunity to be heard, they underscore two sad realities in this case. First, they reflect the casual approach taken by counsel to some aspects of this litigation, since the responses were initially untimely and violated the Court's scheduling order. (Doc. 109) Moreover, these responses disclosed a troubling confusion and lack of candor on certain factual matters. In particular, we could not ascertain when defense counsel, in fact, scheduled this trip which conflicted with her litigation responsibilities. There was a singular source for this mystery and confusion – defense counsel –who reported to this Court that she made her travel plans "during the first of January," (Doc. 107), while claiming in pleadings filed before another judge of this Court in a separate lawsuit that she had actually scheduled her European vacation as early as November, 2010. See Green v. Sneath, No. 09-CV-154 (Doc. 74). Despite questioning from the Court, defense counsel has never provided an adequate explanation for why she provided two different, and completely contradictory, accounts of this travel to two judges of

The Court then provided defense counsel a further opportunity to be heard on June 10, 2011, at a hearing conducted by the Court. (Doc. 116)  Following this hearing, the Court allowed additional opportunities for factual submissions, (Doc. 117), and briefing of this matter by the parties. (Doc.136.)  Indeed, when defense counsel requested further time to reply to aspects of this sanctions petition, (Doc. 182), we granted this request, providing defense counsel additional time to frame a response to this sanctions motions. (Doc. 183)  It is only after months of litigation, and after affording defense counsel numerous opportunities to be heard on this matter, that we first learned that counsel believed that she had been denied due process.

We reject this claim.  It is clear beyond any reasonable dispute that defense counsel had ample notice of this matter, and was afforded multiple opportunities to be heard.  Defense counsel was also on notice from prior sanctions litigation, and from the plaintiff's's motion for sanctions, that financial sanctions of as much as $2,500 might be sought by the plaintiff in this case.  Therefore, the due process requirements of notice and an opportunity to be heard were fully satisfied here, the

---

this Court.

due process claims belatedly advanced by counsel are meritless, and they will be denied.[3]

Having addressed this threshold factual assertion, and having previously found sanctionable misconduct by defense counsel which warrants a financial penalty in the form of attorney's fees, see O'Donnell v. Department of Corrections, No. 09-1173, 2011 WL 3163230 (M.D. Pa. July 26, 2011), we now turn to the assessment of these fees.

**II.     Discussion**

    **1.     Principles Governing Assessment of Fees as Sanctions**

Having determined that attorney's fees are an appropriate sanction here, we note that in setting the amount of this sanction: "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended [by counsel on the sanctionable misconduct of the opposing party] times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The party seeking fees bears

---

[3]We note that these due process concerns are brought by defense counsel acting individually, and have not been advanced by the Commonwealth of Pennsylvania as an institution.  If, however, the Commonwealth believes that further due process must be afforded here, it should file a motion to re-consider this aspect of our opinion.

the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered . . . ." Knight v. Drye, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.2d 143, 150 (3d Cir. 1990). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

Determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that

are 'excessive, redundant, or otherwise unnecessary.'" Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Dellarciprete, 892 F.2d at 1183. Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

In addition to the traditional lodestar analysis, we note that in the context of sanctions litigation – unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party – the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at

194 (citation omitted). Further, one particularly important consideration in determining an appropriate fee charged as sanctions is the violating party's ability to pay. Id. at 195. The Third Circuit explained:

> A particularly relevant equitable factor is the sanctioned party's ability to pay. Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive -- or that might even drive the sanctioned party out of practice.

Id. at 195-96 (footnotes omitted).

### 2, Fees Assessment in this Case

In assessing the reasonableness of this particular requested fee award, "[t]he starting point for a determination of attorney's fees, the lodestar calculation, is the product of [1] the number of hours reasonably expended . . . [2] times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). We, therefore, turn to an assessment of both the reasonableness of the hourly rates claimed by plaintiff's counsel in this matter, as well as a review of the time expended in this litigation specifically in preparation for

the May 2011 trial that defense counsel never intended to conduct since she had left for Europe in May without notice to the Court or counsel.

### (a)     Hourly Rate Calculation

In making this fees determination, we first consider the plaintiff's hourly rate calculation. The plaintiff's fee petition seeks reimbursement for counsel, a highly experienced and effective civil rights advocate, at a rate of $275.00 per hour. The fees petition then seeks reimbursement of paralegal time at an hourly rate of $100 per hour. In determining a reasonable hourly rate, that rate generally "is calculated according to the prevailing market rates *in the relevant community*." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001)(emphasis added). In most cases, the relevant market rate is the prevailing rate in the forum of the litigation, in this case the Middle District of Pennsylvania. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005). Applying this benchmark, we find that our own assessment of attorney fee award hourly rates approved by the courts in this district suggests that attorneys of plaintiff's counsel's background, and experience in this particular legal marketplace, typically command a fee rate of between $200 and $300 per hour. See, e.g., Haines v. Forbes Road School Dist., No. 07–851, 2010 WL 56101 (M.D.Pa. Jan. 5, 2010)($280 hourly rate); Diana v. Oliphant, No. 05-2338, 2009 WL 2426134 (M.D. Pa. Aug. 6, 2009)(hourly rates of $260 and $250); Buck v.

Stankovic, No. 07-717, 2008 WL 4072656 (M.D.Pa. Aug. 27, 2008)(finding a range of reasonable rates for attorneys of varying experience between $160 and $300 per hour); Lohman v. Borough, No. 05-1463, 2008 WL 2951070 (M.D. Pa. July 30, 2008)(hourly rate of $215); DIRECT TV v. Walsh, No. 03-72, 2006 WL 3308668 (M.D.Pa. Oct. 12, 2006)(hourly rates range between $175-$200). Therefore, the hourly rate claimed by plaintiff's counsel in this matter falls squarely within the range of reasonable fees rates previously approved by this Court, and will be adopted by the Court in this case.

Plaintiff's counsel also claims an hourly rate of $100 per hour for the paralegal work done in preparation for this May 2011 trial. In the past, for fee award purposes, paralegal fees have typically been billed at rates that range between $70.00 and $120.000 per hour. See e.g., DIRECT TV v. Walsh, No. 03-72, 2006 WL 3308668 (M.D.Pa. Oct. 12, 2006)(paralegal hourly rate of $65.00); Holliday v. Cabrera & Associates, P.C., No. 05-971, 2007 WL 30291 (E.D Pa. Jan. 4, 2007)(paralegal fees of $115.00). Therefore, this claimed rate of $100 also seems an appropriate, reasonable hourly rate for these particular professional services, one which falls squarely within the range of billing rates previously accepted as reasonable, fair and just by the courts.

### (b)     Hours Worked

Having set the appropriate hourly rates in this case, we now turn to an assessment of the hours expended by counsel in this litigation solely preparing for the aborted May 2011 trial of this case. On this issue, the parties present wildly contrasting views. Plaintiff's counsel submits that the total hours worked in this case preparing for the May 2011 trial were approximately 105 hours of attorney and paralegal time, and seeks reimbursement of more than $23,000 in fees. (Doc. 156) This assessment of hours appears to embrace all aspects of this litigation in May 2011, including not only May trial preparations but also litigating a summary judgment motion. (Id.) This calculation also included time spent in trial preparation after the Court was compelled on May 12, 2011, to halt these proceedings due to the manifest lack of preparation by defense counsel. (Id.) In contrast, defense counsel insists that the only reimbursable expenses are those directly related to the preparation of the sanctions petition, and asserts that the amount of these fees should be capped at no more than $1,100. (Doc. 184)

In reaching our own independent conclusions and calculations, we adopt a middle course. First, we reject defense counsel's crabbed view of what may be recovered. This recovery is not, in our view, limited solely to reimbursement of expenses directly related to the preparation of a sanctions motion, although we agree

that such expenses may be a component of this fees award. In addition, plaintiff's counsel is entitled to some reimbursement for those expenses incurred preparing in May of 2011 for a trial which could never occur because defense counsel had elected to take an undisclosed European vacation, rather than prepare for trial.

Having rejected the very narrow view espoused by defense counsel, we note that we believe that the appropriate sanctions assessment should only entail a calculation of fees for expenses directly related to unnecessary trial preparations in May 2011. Therefore, we would not include in this calculation any fees for litigating the summary judgment motion in this case, a responsibility of plaintiff's counsel which was wholly independent of the May 2011 trial preparations. Moreover, we believe that trial preparation fees incurred after May 12 should not be included in this fees calculus since by May 12, 2011, the parties were on notice that the Court had been compelled to continue this trial due to the misconduct of defense counsel. We would also exclude from this particular fees calculation any time expended by counsel on general case administration which cannot be directly linked to the unnecessary trial preparations in this case caused by defense counsel's dereliction.

With our calculations defined in this fashion, we conclude that a total of 23.50 attorney hours and 10.6 paralegal hours were plainly– and reasonably – devoted to these unnecessary trial preparations and the sanctions litigation occasioned by

defense counsel's failures. This calculation of hours worked then yields attorney's fees for this specific work of $6,462.50 (23.50 hours x $275) and paralegal fees of $1,060 (10.6 hours x $100), or a total fees of $7,522.50.

While this sum, $7,522.50, sets the outer parameters of an attorney fee award in this matter, in sanctions litigation there is one other factor we must consider, an essentially equitable concern. In addition to the traditional lodestar analysis, in the context of sanctions litigation – unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party – the court may only impose a sanction that represents *"the minimum that will serve to adequately deter the undesirable behavior"* that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted)(emphasis added). Further, one particularly important consideration in determining an appropriate fee charged as sanctions is the violating party's ability to pay. Id. at 195. The Third Circuit explained:

> A particularly relevant equitable factor is the sanctioned party's ability to pay. Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive -- or that might even drive the sanctioned party out of practice.

Id. at 195-96 (footnotes omitted).

In our view, these equitable considerations call for some further mitigation of this fee award for several reasons. First, it has been represented to the Court that defense counsel is leaving government employ, and will face less certain future earnings. This factor alone calls for some mitigation of the fee award here. Second, we cannot say that a sanctions of $7,522.50 is "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted). Therefore, the principles which guide our judgment in this field call for some further mitigation of this sanction. Finally, while we have rejected defense counsel's broadly framed and meritless due process claims, we note that the initial financial sanction sought here by Plaintiff's counsel was limited to $2,500. To avoid any unfair prejudice to defense counsel resulting from any perceived lack of notice regarding the potential scope of this financial sanction, and mindful that our sanction should represent the minimum that will serve to deter this behavior, we believe that a sanction of $2,500 in attorney's fees is a fair and just penalty in this matter.

### III.   Conclusion

While we find that this attorney's fees award is appropriate here given the serious and repeated nature of the non-disclosures by defense counsel, we conclude this decision as we began it by expressing our regret that this conduct becomes the

coda for counsel's three decades of government service. However, that sense of regret cannot deter us from our responsibilities when confronted by persistent misconduct in the face of explicit admonitions that candor is required of all counsel.

Accordingly, for the foregoing reasons, IT IS ORDERED as follows:

The Plaintiff's third motion for sanctions, (Doc. 103) is GRANTED, in part, and defense counsel is directed to pay $2,500 to plaintiff's counsel on or before November 28, 2011, as a sanction for this litigation misconduct.

So ordered this 18th day of October, 2011.

                                              */s/ Martin C. Carlson*
                                              Martin C. Carlson
                                              United States Magistrate Judge